## Case No. 15,381.

### UNITED STATES v. HOLLY.

[3 Cranch, C. C. 656.] [1]

Circuit Court, District of Columbia. Dec. Term, 1829.

#### GAMING LAWS—NUISANCE.

The authority given to the corporation of Washington, by their charter of 1804, is "to restrain or prohibit." "all kinds of gaming." The by-law of the 16th of August, 1809, prohibiting the setting up or keeping any faro-table. &c. within the city of Washington; and a conviction under that by-law, are no bar to an indictment against the same person for a nuisance at common law by keeping a common gambling house at the same time.

[Cited in Town of Van Buren v. Wells. 14 S. W. 40.]

Indictment at common law for keeping a common gaming house, and procuring divers idle and evil disposed persons to frequent and come to play together at a certain unlawful game called faro, for divers large and excessive sums of money; to the great damage and common nuisance of the good citizens of the United States, to the evil example, &c.

Verdict guilty, subject to the opinion of the court upon the fact that the defendant

has been convicted and fined, by a justice of the peace, under the by-law of the corporation of Washington, of the 16th of August, 1809, for keeping a faro-table in the same place, and for the same time, whether such conviction is a bar to this prosecution. By that by-law it was enacted, that "no E O, A B C, L S D, faro, rolly-bolly, shuffle-board, equality-table, or other device to be used with cards, balls, dice, coin or money, except billiard-tables, for the purpose of playing, or gaming for money, or any thing in lieu thereof, shall be set up or kept in any part of this city, under the penalty of $20, for every day or less time," &c. "to be recovered of the person so setting up or keeping the same, before a single magistrate, one half whereof shall go to the informer, and the other for the use of the city council."

Among the powers given to the corporation by the act of congress (2 Stat. 254) of the 24th of February, 1804, was the power "to restrain or prohibit," "all kinds of gaming."

Mr. Swann, for the United States, cited and relied upon U. S. v. Wells [Case No. 16,661]. in this court, at December term, 1811.

Mr. Jones and Mr. Coxe, for the defendant contended, that the power given to the corporation by the charter, to restrain or prohibit all kinds of gaming, was exclusive, as to the city of Washington, and superseded the common law upon that subject. The case of U. S. v. Wells [supra], is not applicable. It was an indictment under Act Assem. Md. 1797, c. 110, for keeping a faro-bank in a house occupied by a tavern-keeper, in Georgetown. The power given to the corporation of Georgetown by the charter was, "to restrain or prohibit gambling;" "and to pass all laws, not inconsistent with the laws of the United States. which may be necessary," &c. The defendant. Wells, had been fined by a justice of the peace, under the by-law of March 7, 1806, for "gaming" at a faro-bank kept by himself; which act of gaming was at the tavern in which the faro-bank was kept by the defendant, in violation of Act Md. 1797, c. 110, and was one of the acts of gaming given in evidence at the trial of the indictment. The power of the corporation of Georgetown can not be exercised so as to repeal or supersede the general law of the land; and such was the opinion of the court, who said that the payment of the fine under the by-law did not prevent the operation of the general law of 1797, c. 110. But the power of the corporation of Washington is unlimited. The subject of gaming is entirely given up to their cognizance, and the by-law covers the whole common-law offence. A by-law enacted under the charter is equivalent, as respects the city, to an act of congress; upon paying the penalty a man may commit the offence. A conviction, upon the statute, for forging a note of the Bank of the United States, is a bar to a prosecution at common law for forging the same note. Piracy is an offence

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

against the law of nations. and punishable by any nation: a conviction in America is a bar to a subsequent conviction in England. So in cases of concurrent jurisdiction, the court which first has possession of the cause has exclusive cognizance of it. U. S. v. Pirates, 5 Wheat. [18 U. S.] 197; Smith v. McIver, 9 Wheat. [22 U. S.] 535; The Robert Fulton [Case No. 11,890]; U. S. v. Bevans, 3 Wheat. [16 U. S.] 339. By its charter the corporation of Washington has "full power and authority to prohibit all kinds of gaming." If they have acted upon the subject, and omitted to prohibit, they have sanctioned what they have not prohibited. Having assumed to legislate upon the subject, the power has become exclusive. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 17. McLearn's Case, in this court at December term, 1809 (not reported), was an indictment under the Maryland law of 1798, c. 113, for keeping a billiard-table without a license. By the charter of the city of Washington of May 3, 1802 (2 Stat. 195), the corporation had power "to restrain or prohibit gambling," and to "prevent and remove nuisances," and "to provide for licensing and regulating auctions, retailers of liquors, hackney-carriages," &c. And by the amended charter of February 24, 1804 (Id. 254), they had power "to restrain or prohibit" "all kinds of gaming." On the 25th of May, 1803, the corporation passed a by-law requiring licenses to be taken out for certain objects, and among others, for keeping a billiard-table for gain, upon paying therefor the sum of $50. This court was of opinion that the charter of Washington repealed so much of the law of Maryland of 1798. c. 113, as required a license for the keeping of a billiard-table in the city to be taken out from the clerk's office. The court had before given a similar opinion in regard to retailers of spirituous liquors, &c.

Mr. Swann, for the United States. submitted the case. without argument. upon the following authorities: Hawk. P. C. bk. 1, c. 75. § 6: 1 Mod. 76; 2 Keb. 846; 3 Keb. 464; 5 Mod. 142; 1 Vent. 168; 3 Burrows, 1233; 1 Russell. 433.

CRANCH. Chief Judge (nem. con.). This is an indictment at common law for a nuisance in keeping a common gambling house. Verdict guilty; subject to the opinion of the court upon the question whether a conviction before a justice of the peace, under a by-law of the corporation of (Burch's Dig. 95) August 16, 1809, for keeping a faro-table. and judgment for the penalty of twenty dollars per diem, is a bar to this prosecution; it being admitted that the conviction and judgment before the justice of the peace cover the whole time for which he is charged in the present indictment for keeping the disorderly house. The indictment charges that the defendant, "on the 15th of January, 1829, and on divers days and times between that day and the day of taking this inquisi-

tion, with force and arms, unlawfully did keep and maintain a certain common gaming house; and in the said common gaming house, for hire and gain, on the said 15th day of January, in the year aforesaid, and on the said other times and days, then and there unlawfully and wilfully did cause and procure divers idle and evil-disposed persons to frequent and come, to play together at a certain unlawful game called faro; and in the said common gaming house, on the said 15th day of January in the year aforesaid. and on the said other days and times, there unlawfully and wilfully did permit and suffer the said idle and evil disposed persons to be and remain playing and gaming at the said unlawful game called faro, for divers large and excessive sums of money, to the great damage and common nuisance of the good citizens of the United States, to the evil example of all others in like cases offending, against the peace and government of the United States." The by-law of the corporation of August 16, 1809, entitled "An act to suppress gaming," enacts:

"Section 1. That after the passage of this act, no E O, A B C, L S D, faro," &c., "or other device to be used with cards," &c.. "for the purpose of playing or gaming for money," "shall be set up or kept in any part of this city, under the penalty of twenty dollars for every day or less time that such faro," &c., "shall be so kept and maintained; to be recovered of the person so setting up or keeping the same, before any single magistrate, one half whereof shall go to the informer, and the other for the use of the city council."

"Sec. 2. That if any person shall permit any faro," &c., to be "set up, kept, or played in his house," &c., "he shall incur the penalty of twenty dollars for every day or less time that the same is so 'kept up and maintained,' to be recovered," &c., as in the first section.

There is no statement of the facts of this case. but I understand that the defendant has been sentenced by the justice of the peace to pay a fine of twenty dollars per diem for keeping and maintaining a faro-table in the house of Dr. Smethers, for the whole time proved upon the present indictment.

It is contended, by the counsel of the defendant. that the common law as to the nuisance of a common gaming house is repealed, in regard to the city of Washington, by the powers given to the corporation. "to prevent and remove nuisances;" "to restrain and prohibit" "all kinds of gaming;" "to cause" "all such as keep public gaming tables or gaming houses to give security for their good behavior." "and to indemnify the city against any charge for their support;" "to pass all laws which shall be deemed necessary and proper for carrying into execution the powers vested by that act. in the said corporation or its officers;" and "to impose and appropriate

fines, penalties, and forfeitures for the breach of their laws or ordinances." It is supposed that these provisions cover the whole common-law offence of nuisance arising from the keeping of a public gaming house; and transfer to the corporation of Washington the whole legislative jurisdiction over the subject; and that as the corporation has legislated in part upon the matter, the common-law offence is abrogated; inasmuch as by legislating in part the corporation has signified its will that every thing should be permitted which they have not expressly forbidden. Such I understand to be the argument. and it seems to be the only argument which can bear an appearance of plausibility; for the by-law does not cover the whole ground of the common-law offence. It only punishes the setting up or keeping a faro-table, &c., or permitting it to be set up, kept, or played. But the common-law offence does not consist in the setting up or keeping a faro-table or other device for the purpose of playing or gaming for money; but in its being kept and used as a public or common gaming house.

The by-law punishes the act of setting up the table—the common law punishes the act of permitting it to be used as a common gaming house. It is this and this only that makes it a common nuisance, and, as such, punishable by fine and imprisonment at common law. The offence created by the by-law, therefore, is not a complete substitute for the common-law offence. It cannot be supposed that congress, by giving the corporation of Washington power "to restrain and prohibit all kinds of gaming," intended to abrogate the common-law offence before the corporation should have actually legislated upon the subject and provided a substitute. No motive for such an intention can be imagined. It is not in the power of congress to delegate to the corporation an exclusive right of legislation upon this subject. Its by-laws must be subject to the control of congress at all times; and it would be natural to conclude that the grant of a vicarious power to legislate upon a subject, would not, until that power is executed, be a repeal of all pre-existent laws upon that subject, any more than it would if the whole power of legislation had been still retained in the hands of congress. And even, admitting that congress could delegate the whole power of legislation, and should delegate it, yet such delegation would not, of itself, repeal all the existing laws. They would still remain in force until altered or repealed by the delegated authority. If, therefore, we admit that the power given to the corporation, "to prevent and remove nuisances," authorizes the corporation to define and punish the offence of keeping and maintaining a common gaming house in such a manner as to be a common nuisance, as defined by the common law; yet the corporation not having done so, the common law remains unaltered; and the

fact that the defendant has been punished under the by-law, for setting up and keeping a faro-table, is no bar to his conviction of the offence of keeping and maintaining a common gaming house in such a manner as to be a common nuisance.

In the case of U. S. v. Wells [Case No. 16,-661], at June term, 1812, the indictment was for keeping a faro-table, in a house occupied by a tavern-keeper, contrary to Act Md. 1797, c. 110. The defence was that he, as keeper of the faro-table, had been fined twenty dollars under the by-law of Georgetown of March 7. 1806, for "an offence of gaming" at the table. It was there also urged that the act of congress to amend the charter of Georgetown, passed March 3, 1805 [2 Stat. 332], giving to the corporation the power "to restrain or prohibit gambling," to impose "and appropriate fines, penalties, and forfeitures, for breach of their ordinances." and "to pass all laws, not inconsistent with the laws of the United States, which may be necessary to give effect and operation to all the powers vested in the said corporation." and the by-law of March 7, 1806, by which the corporation executed the power given them to restrain or prohibit gambling, operated as a repeal of Act Md. 1797, c. 110. But the court in that case was of opinion that the act of Maryland was not repealed; and ordered judgment to be entered for the penalty of £50. The offence under the act of Maryland was the setting up and maintaining a faro table, or other device for the purpose of gaming for money, in a dwelling-house occupied by a tavern-keeper. The offence under the by-law was the setting up, keeping, or maintaining a public gaming house, or public gaming table, or other device for common gaming; and the by-law gave a penalty of twenty dollars for every offence of gaming at the table, to be paid by the keeper. whether it were or were not kept in a house occupied by a tavern keeper. That case was stronger in favor of the defendant than this: for there the by-law covered the whole offence described in the act of Maryland. The court, however, thought that the penalty of the by-law was cumulative, and intended to be in addition to that imposed by the Maryland law.

The case of licenses for taverns. retailers of spirituous liquors, and billiard tables, is different from this, which is an offence at common law. There the offence was a mere malum prohibitum: a penalty for not paying a tax and taking a license from a particular authority. When the tax was given to the corporation, as well as the means to enforce its payment. the whole subject was transferred to the corporation as a matter of revenue. But a common nuisance is a malum in se, or it would not be a common-law offence: and a delegation of power to legislate upon the subject cannot be construed into an intention to repeal the common law; for even a providing a new punish-

ment for a common-law offence has never been held to prevent a conviction upon an indictment for the offence at common law, without express words to that effect; much less would that effect be produced by a delegation of power to legislate upon the subject.

. We are, therefore, of opinion, that the offence is still indictable at common law, and that judgment should be rendered for the United States upon the verdict.

Judgment for the United States, for a fine of $200.

See U. S. v. Ismenard [Case No. 15,450]; Docker's Case [Id. 3,946], December, 1805; Mc-Learn's Case, December, 1809 (not reported); Wells' Case [supra], December, 1811; and U. S. v. Dixon [Case No. 14,969]. December, 1813.