### ROSENCRANZ v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 20, 1907.)

No. 1,404.

1. CRIMINAL LAW — JURISDICTION OF OFFENSE — OFFENSES AGAINST UNITED STATES AND MUNICIPALITY.

Under the rule that when a court has jurisdiction of a crime a statute which merely confers the same judisdiction on another court, or authorizes a municipality to define and punish the same act, does not deprive the first court of its jurisdiction unless there is an express provision or clear implication to that effect, Act April 28, 1904, c. 1778, 33 Stat. 529, conferring power on municipalities in Alaska to prohibit certain things and punish the same as misdemeanors, and which repeals all prior acts and parts of acts inconsistent therewith, although acted upon by a town, does not affect the jurisdiction of the District Court over prosecutions for the same acts which are made offenses by Carter's Alaska Code March 3, 1899, c. 429, 30 Stat. 1253, there being no inconsistency between the dual jurisdictions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 176.]

2. SAME—INDICTMENT—ABOLITION OF DISTINCTION BETWEEN ACCESSORY AND PRINCIPAL.

Under Pen. Code Alaska, §§ 186, 188, which abolish the old distinctions between principal and accessory before the fact, one who aids and abets another in the commission of a crime may be charged in the indictment and convicted as a principal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 103.

Prosecution and punishment of accessories, see note to 44 C. C. A. 326.]

3. DISORDERLY HOUSE—ELEMENTS OF OFFENSE—LETTING PREMISES FOR BAWDYHOUSE.

An owner of property, or an agent of such owner, who knowingly rents the same to another to be used as a bawdyhouse, the keeping of which is a misdemeanor, aids and abets the commission of the offense, and under Pen. Code Alaska, § 188, which provides that in misdemeanors there are no accessories, is punishable as a principal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Disorderly House, § 6.]

4. JURY—COMPETENCY OF JURORS—BIAS AND PREJUDICE.

The examination of jurors on their voir dire in a criminal case held to have disclosed such a state of mind on their part as to render the overruling of challenges by defendant for actual bias an abuse of discretion, where each disclosed that he had a fixed opinion that the defendant was guilty, and, while one thought he could lay his opinion aside "if the evidence showed he was not guilty," another stated that his was a strong opinion which he would not be able to rid himself of.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, §§ 461–479.]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Mose Rosencranz, plaintiff in error, was indicted under the code of Alaska for the crime of keeping a bawdyhouse. The indictment, in its direct charging part, is as follows: "The said Rosencranz within two years last past, to wit, on the 30th day of September, nineteen hundred and six, in the district aforesaid, did wrongfully and unlawfully keep and set up a house of ill fame, brothel, and bawdyhouse, for the purpose of prostitution, fornication, and lewdness, the same being that certain apartment, being the fourth apartment east of the westerly line thereof on the southerly end of lot 46, block 19, according to the town-site plat thereof, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States." Rosencranz interposed a plea in abatement, alleging that the municipal court in and for the city of Nome, Alaska, had exclusive jurisdiction of the offense charged in the indictment, and that the District Court of the United States for the District of Alaska, Second Division, had no jurisdiction. He also filed a demurrer to the indictment, based upon the ground that the grand jury had no legal authority to inquire into the crime charged, and that the indictment did not conform to the requirements of chapter 7 of title 2 of the act of Congress entitled "An act to define and punish crimes in the District of Alaska and to provide a Code of Criminal Procedure for said district" (Act March 3, 1899, 30 Stat. 1253, c. 429); and that the facts stated in the indictment do not constitute a crime. The court overruled the plea and the demurrer. Trial was had. At the close of all of the evidence, plaintiff in error moved the court to direct a verdict of 'not guilty. This motion was based upon the principal ground that the indictment did not allege a crime under the laws of Alaska, and that the evidence failed to show that plaintiff in error had acted as agent, owner, proprietor, or lessor, or that he had knowledge of the use to which the property had been put. This motion was overruled. Plaintiff in error was convicted, and sentenced to imprisonment for one year. He prosecutes this writ of error to review the proceedings and rulings of the lower court, and to set aside the judgment of conviction.

James W. Bell, C. D. Murane, Hobbes & Bell, W. H. Bard, James E. Fenton, and Albert Elliot, for plaintiff in error.

Henry M. Hoyt, U. S. Atty., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. The first contention of the plaintiff in error is that the District Court of Alaska had no jurisdiction because by the act of Congress approved April 28, 1904 (33 Stat. 529–534 c. 1778), which was "An act to amend and codify the laws relating to municipal corporations in the District of Alaska," Congress conferred upon municipal corporations in Alaska the power to prohibit gambling, houses of ill fame, and other misdemeanors. and to prescribe the punishment therefor, and that thereby it repealed section 127 of the act of Congress approved March 3, 1899 (Carter's Code), providing for the prosecution and punishment of such offenses in the District Courts of the territory. The particular clause of the act of April 28, 1904, which is relied upon by plaintiff in error, reads as follows:

"Sec. 8: That all acts and parts of acts inconsistent with this act are, to the extent of such inconsistency hereby repealed: and the provisions of this act shall apply to and govern all municipal corporations heretofore created in the District of Alaska." 33 Stat. 534.

It is established by the plea filed by plaintiff in error that the city council of Nome did on August 1, 1904, pass an ordinance making it a misdemeanor to set up or keep a house of ill fame or bawdyhouse for

the purpose of prostitution. The argument is that Congress intended to vest in the municipal authorities exclusive jurisdiction of the misdemeanors mentioned, and that the purpose was to prevent a conflict between the federal and local authorities within the limits of incorporated towns. To support this reasoning plaintiff in error cites decisions by the Supreme Courts of California and Missouri. But upon examination of the principal case relied upon, Green v. Superior Court, 78 Cal. 556, 21 Pac. 307, 541, we find that it is really inapplicable. That was an application for a writ of prohibition by Green, who was indicted in the superior court of the city and county of San Francisco for conspiracy. The writ was sought upon the ground that inasmuch as conspiracy was punished by imprisonment not exceeding one year, or by fine not exceeding $1,000, or by both, jurisdiction was exclusively in the police court of the city and county of San Francisco. The Constitution of the State of California provided that the superior courts should have jurisdiction in all criminal cases amounting to felony, and cases of misdemeanor not otherwise provided for. By further constitutional power the Legislature was authorized to fix the jurisdiction of inferior courts created by it in pursuance of the Constitution; and an act was passed which prescribed the jurisdiction of the police court of the city and county of San Francisco, wherein it was provided that the police court should have jurisdiction of misdemeanors of a certain class, which included conspiracy. The court held that the jurisdiction had become exclusive in the police court because the Constitution had plainly conferred jurisdiction in the superior courts only until otherwise provided for, and that, inasmuch as other provision has been made, the authority of the superior court ended, as it was meant it should end under the provisions of the Constitution. It will be understood, therefore, that the decision turned upon the terms of the Constitution of the state, which indicated an intention that there should be jurisdiction in the one court. In the course of the opinion, however, the court expressly recognized the rule as a well-established one that where jurisdiction is given either by Constitution or statute to two different courts, not indicating whether such jurisdiction shall be exclusive or concurrent, the same may be regarded as concurrent in both courts, although the case then before the court was not brought within the operation of the rule, for reasons already indicated. So far, therefore, as the opinion is pertinent at all to questions of jurisdiction involved in the present case, it is but one of the many decisions which recognize the principle that, when a court has jurisdiction of a crime, a statute which merely confers the same jurisdiction on another court does not deprive the former court of its jurisdiction, unless there is an express provision or clear implication to that effect. The consequence is that concurrent jurisdiction is conferred. 12 Cyc. p. 199; State v. Nichols, 60 Atl. 763, 27 R. I. 69; Moren v. Commonwealth, 76 S. W. 1090, 116 Ky. 859. This principle is thus stated by Cooley in his Constitutional Limitations, p. 279:

"Nor will conferring a power upon a corporation to pass by-laws and impose penalties for the regulation of any specified subject necessarily supersede the state law on the same subject; but the state law and the by-law may both stand together if not inconsistent. Indeed, an act may be a penal offense under the laws of the state, and further penalties under proper legis-

lative authority be imposed for its commission by municipal laws. And the enforcement of the one would not preclude the enforcement of the other."

Among the well-considered decisions in accord with Cooley's text are: Ogden v. City of Madison, 111 Wis. 413, 87 N. W. 568, 55 L. R. A. 506, where it was held that where the keeping of a house of ill fame was made a misdemeanor by state law, so that one accused of doing so was entitled to a jury trial, it did not prevent a municipality from imposing a penalty for a like offense which could be enforced without a jury trial; McInerney v. City of Denver et al., 29 Pac. 516, 17 Colo. 302, where petitioner was convicted of keeping open a tippling house in violation of a city ordinance, and it was held that, although by general statute of the state the act was made a misdemeanor, yet the Legislature could delegate power to municipal corporations to adopt and enforce ordinances on matters of special local importance, even though general statutes exist relating to the same subject, and both could be given effect; Territory v. Guyott, 9 Mont. 46, 22 Pac. 134, where an act of the territory of Montana which made it a felony to sell liquor to an Indian was held to be constitutional, though Congress had passed a statute making the act a crime; and Town of Van Buren v. Wells, 14 S. W. 38, 53 Ark. 368, 22 Am. St. Rep. 214, where a conviction under a state law for carrying concealed weapons was held not to be a bar to a prosecution for the same act under a city ordinance. It was also decided in U. S. v. Wells, 2 Cranch, C. C. 45, Fed. Cas. No. 16,662, that a by-law of Georgetown prescribing a penalty for keeping a public gaming table did not supersede nor repeal a general law of Maryland prescribing a penalty for keeping a faro table in a house occupied by a tavern keeper; and in U. S. v. Holly, 3 Cranch, C. C. 656, Fed. Cas. No. 15,381, Judge Cranch ruled that it was not to be supposed that a power to pass by-laws to prohibit gambling, conferred upon the city of Washington, was to be regarded as an exclusive power bestowed. As we look at the question, Congress, in conferring power upon the municipalities of Alaska to prohibit houses of ill fame, gambling, disorderly conduct, and other offenses, and in conferring the further power upon the municipalities to define such offenses and to prescribe the punishment therefor, intended to bestow a larger measure of local self-government upon municipalities in respect to the regulation of certain matters usually brought under the police power as subjects of local municipal regulations; but in delegating such power we do not think that it was meant that Congress should surrender its own right of control over the subjects enumerated in the act of April 28, 1904, supra. There is no inconsistency between the dual jurisdictions; and, as the repealing provision of section 8, supra, only went to the extent of inconsistencies between the later and earlier legislation, both acts must be sustained, and effect must be given to both. We therefore hold that the District Court was correct in denying the several pleas and motions which were made to test the jurisdiction of the court.

The next contention of plaintiff in error is that the court should have directed a verdict of acquittal because of a fatal variance between the indictment and the proof, in that the charge is that plaintiff in error did unlawfully keep and set up a house of ill fame for pur-

poses of prostitution, whereas the evidence merely tended to establish that plaintiff in error owned the premises and received rental therefor from a woman who used the place for purposes of prostitution. Under section 186 of the Penal Code of Alaska, all persons concerned in the commission of a crime, whether it be felony or misdemeanor, or whether they directly commit the act constituting a crime or aid in the commission, though not present, are principals, and are to be tried and punished as such, and, by section 188, in misdemeanors there are no accessories. Plaintiff in error argues, however, that the particular acts which establish that a defendant aided and abetted the crime, and thus became in law a principal, must be pleaded in the indictment. To support this position he relies upon People v. Campbell, 40 Cal. 129, and State v. Gifford, 19 Wash. 464, 53 Pac. 709. These two cases hold that while it is proper to indict, try, and punish an accessory as a principal, yet that the particular acts which establish that he aided and abetted the crime, and thus became in law a principal, must be stated in the indictment. But in People v. Outeveras, 48 Cal. 19, the case of People v. Campbell, supra, was distinguished and in effect overruled, the court distinctly holding that principals in the second degree and accessories before the fact are all deemed chief actors under statutes generally similar to those in Alaska; that is, they are principals in the first degree in the commission of the crime, and are to be indicted, tried, and punished as such principals. The decision was put upon the ground that the statutes have abolished distinctions between accessories before the fact and principals, and that there is no variance between proofs and allegations if the charge is against one as principal, yet the evidence discloses that he is what has been called an accessory, for the law has declared that the aiding and abetting shall make the offender guilty as a principal, and that he may be charged accordingly. And in the later case of People v. Rozelle, 78 Cal. 84, 20 Pac. 36, the court reaffirmed the doctrine of People v. Outeveras, supra, again overruling People v. Campbell, supra. The case of State v. Gifford, supra, supporting plaintiff in error, was also expressly held to be against the current of recent authorities by the Supreme Court of Montana (State v. Geddes, 22 Mont. 68, 55 Pac. 919), where the earlier decision of the Supreme Court of Washington (State v. Duncan, 35 Pac. 117, 7 Wash. 336, 38 Am. St. Rep. 888), was cited with approval. See, also, People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 8 Am. St. Rep. 701; Bishop's New Cr. Law, § 674; State v. Kent. 62 N. W. 631, 4 N. D. 577, 27 L. R. A. 686; State v. Rowe, 104 Iowa, 324, 73 N. W. 833; State v. Comstock, 46 Iowa, 265; People v. Chapman, 62 Mich. 280, 28 N. W. 896, 4 Am. St Rep. 857; Boggus v. State, 34 Ga. 275; Stevens v. People, 67 Ill. 587; State v. Jones, 83 N. C. 605, 35 Am. Rep. 586; 1 Enc. Pl. & Pr. 69, 70; 1 Sup. Enc. Pl. & Pr. 14. In State v. Steeves, 43 Pac. 947, 29 Or. 85, the Supreme Court of Oregon passed upon the question now under consideration. A defendant was there jointly indicted with one Kelly for the crime of murder in the first degree. Defendants had separate trials. The defendant Steeves was not present at the killing, but the evidence showed that he counseled and procured his codefendant to kill the

deceased. It was insisted by defendant that, inasmuch as he was charged with the overt act and not as an accessory, his constitutional right to be informed of the nature and cause of the accusation against him was invaded, and that he could not tell by an inspection of the charge that an attempt would be made to prove he was an accessory before the fact. But the contention was held to be unsound, the court pointing out that the statute of the state which abrogated distinctions between accessories before the fact and principals, and authorized all persons concerned in the commission of a felony, whether they directly committed the act constituting the crime or aided and abetted in its commission, though not present, to be indicted, tried, and punished as principals, was valid, and that, when the law abolished distinctions between classes of offenders, an indictment charging one with the doing of the overt act substantially informed him of the nature and cause of the accusation against him. In Lowenstein v. People, 54 Barb. (N. Y.) 299, it was decided that a man who rents a house to be kept as a disorderly house, and which is so kept with his knowledge, especially where he derives a profit from that mode of using the property, may well be called the keeper of the house and be punished as such. And in People v. Erwin, 4 Denio (N. Y.) 129, it was held that the owner of a house who rents it to be used and kept as a house of prostitution is to be deemed a keeper of a bawdyhouse, and is liable to indictment and conviction as the keeper of such a house. The Court said:

"In misdemeanors there are no accessories. All who procure, counsel, aid, or abet the commission of the crime are principals."

The federal courts adopt the same rule, recognizing that the old distinctions which only pertained to felonies are generally abrogated, and that a charge against one formerly known as an accessory before the fact is good against him as principal. United States v. Snyder (C. C.) 14 Fed. 554; Toledo Ry. Co. v. Penn. Co., 54 Fed. 736, 19 L. R. A. 387; United States v. Stevens (D. C.) 44 Fed. 140.

Our conclusion is that where a statute has done away with former distinctions between principal and accessory before the fact, as it has in Alaska, a charge against one formerly known as an accessory is good against him as principal, and that he must answer to the proofs whether they disclose that he was present and did the overt act, or, not being present, aided and abetted the doing of it in a way to make himself liable as a principal.

It is next insisted that the court erred in overruling the challenges for cause to a number of jurors. Nearly every juror who sat was retained over the objection of plaintiff in error. Several of the jurors said they had prejudices against the keeping of bawdyhouses, that they knew the locality in the city of Nome described in the indictment and were prejudiced against it, but that they did not know the defendant, and would not convict him unless the prosecution established guilt beyond a reasonable doubt. It is evident that some of the jurors sat upon juries in the trials of other cases where defendants were charged with like offenses, and had formed opinions of more or less strength by reason of having heard the evidence in such other cases; yet their examinations failed to disclose such a knowl-

edge of the facts connected with this case, or such a frame of mind generally as to warrant us in holding that the trial court abused its discretion in overruling the challenges for cause. But among the jurors challenged were three whose examinations were as follows:

Phil. Ernst testified:

"I heard the statement of the case. I was one of the jurors in the Ludovic case; I have an opinion at this time as to the guilt or innocence of the defendant—I might say a fixed opinion, such as would require considerable evidence to remove. I believe I could be a fair and impartial juror. I don't know positively whether I could or not. I don't know the man, and have no prejudice against him. I have a prejudice against that business, but I have no knowledge of whether he is guilty or not; I might require less evidence to find a man, charged with setting up and keeping a bawdyhouse, guilty, but I think I would require the government to prove all the allegations of the indictment. I would require the government to prove him guilty by the preponderance of the evidence before I would render a verdict against him. I have an opinion as to the character of the house alleged from its description and locality; proof that the house was in the restricted district would be sufficient to my mind to establish its character. I don't know that a vacant house could have any character. There might be a laundry there. I don't know; but there would have to be evidence to show that to my mind. If the government simply introduced proof that the house is in the restricted district and no more proof were offered, I think I would conclude that it was a bawdyhouse from its locality."

"Mr. Bell: We challenge the juror for actual bias."

On cross-examination the juror said:

"I think that the government should prove beyond a reasonable doubt that the house which is alleged in the indictment was used as a house of ill fame or for the purposes of prostitution; but I would not infer that merely from the locality; but if there were no evidence offered as to the character of the house, and it was proved to be in that district, why, then, I would have an opinion as to its character from the district. I don't know this house; I would require the government to prove all the allegations of the indictment beyond a reasonable doubt before I would find the defendant guilty."

Chris Frantzen testified:

"I heard the statement of the case. I don't know the defendant. I have never heard the case discussed in any way. I have an opinion at this time as to the guilt and innocence of the defendant; it is a fixed opinion. I think I could lay it aside if the evidence showed he was not guilty. I was one of the jurors in the Ludovic case. I would try to lay aside my opinion and try the case according to the evidence. I am sure I could do it; but I have an opinion at the present time. I feel at the present time it would require evidence to remove that opinion; as it is, I would have to have some testimony before my mind would be evenly balanced as to the guilt or innocence of the defendant. I would not enter upon the trial of this case as a fair and impartial juror; that opinion which I now have would have some weight in considering the testimony and weighing the testimony that would be introduced, and my mind would be biased upon the testimony in finding a verdict at the present time. I do not feel that I could lay that opinion aside entirely and disregard it as though I never had any opinion whatever.

"Mr. Bell: We submit a challenge for actual as well as implied bias.

"Mr. Hoyt: We resist.

"Q. (by Mr. Landers) Upon what is that opinion based? A. Well, the house is inside the stockade. Q. You have an opinion just as to the character of the house then? A. Yes.

"(Continuing) I don't know anything about this house. I have a prejudice against the houses back in the stockade. I don't know whether this house is run as a house of prostitution or not. I don't know whether it is run by the de-

fendant. I have heard that he has several houses there, inside the stockade. I don't know whether he has or not. I don't know whether this particular house alleged in the indictment is one of them or not. I have an opinion in regard to this particular charge. I would enter into the trial of this case without any opinion whatever in regard to this particular charge of keeping a bawdyhouse within a certain house within that district."

James E. Cahill testified:

"I heard the statement of the case. I have heard the facts about this case. I know who the defendant is by sight. I have an opinion at the present time as to the guilt or innocence of the defendant. It is a decided opinion, which would require evidence to remove. It would require considerable evidence to remove the opinion that I now have, and I do not think I could lay it aside and have no weight in considering the testimony.

"Mr. Murane: We submit a challenge for actual bias.

"Mr. Hoyt: Challenge resisted.

"Q. (by Mr. Hoyt) Is your opinion based upon some knowledge which you have? A. No, just a general impression. Q. An impression, or a prejudice? A. No, an impression. Q. You have no knowledge as to the guilt or innocence under this charge? A. None whatever. * * *

"(Continuing) That is a strong opinion which I possess and which I will not be able to rid myself of.

"Mr. Hoyt: We do not resist the challenge.

"Q. (by the Court) Would you mix up with the evidence in the case, if you were sworn to try the case, would you mix up any knowledge that you might have with the evidence and base your verdict partly on that? A. Oh, no; I would not allow my prejudice to guide me to a verdict. Q. You do not know the defendant? Have you any prejudice against the United States? A. None whatever. Q. Do you think you could enter the jury box and render a fair, just, and impartial verdict? You would not convict anybody, would you, unless the evidence satisfied your mind beyond a reasonable doubt? A. I think, on the contrary, I would be more lenient after forming an opinion."

The statutes of Alaska bearing upon the qualifications of jurors are that a challenge for cause exists:

"Sec. 125. * * * Second. For the existence of a state of mind on the part of a juror in reference to the action or to either party which satisfies the trier, in the exercise of a sound discretion, that he can not try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias. * * *

"Sec. 127. Challenge for Actual Bias. That a challenge for actual bias may be taken for the cause mentioned in the second subdivision of section one hundred and twenty-five. But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror can not disregard such opinion and try the issue impartially."

It is not to be disputed that, unless manifest error has occurred in ruling upon the qualifications of jurors, the action of a trial court should not be disturbed. The position of the trial judge necessarily enables him to try the fitness of a juror to much better advantage than an appellate court can. Thiede v. Utah, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237. It often happens that the very manner in which the answers are given by a juror greatly aids the trial court in judging fairly of the state of the juror's mind. It sometimes occurs that a juror, particularly if he is a man who is unfamiliar with court procedure, or one not well versed in the English language, or one who is uneducated, does not at once fully understand the significance of

the questions put to him by counsel as to any opinions or impressions he may have bearing upon the case. Sometimes it is only by repetition and perhaps after some explanation that the juror appreciates the purpose of the proceeding and slowly discloses the actual state of his mind. Such a juror may be perfectly honest, not trying to keep back anything; he may be anxious to be wholly truthful; yet upon the bare printed record there appear to be inconsistencies or evasions in his answers. We believe generally that in such instances the discretion of the trial court, presumably wisely exercised, should control, and appellate courts ought to refuse to interfere. But, on the other hand, in the interpretation of statutes concerning challenges to jurors for cause, it is of vital importance that the constitutional right to an impartial jury secured to a defendant by the sixth amendment be most carefully guarded, no matter how unimportant the case may be wherein it is seriously urged that this right has been denied. In Williams v. United States, 93 Fed. 396, 25 C. C. A. 369, decided by this court, there was no difference of opinion upon these general principles, but the judges disagreed upon whether or not the action of the trial court presented a case of manifest error, the majority holding it did. In Dolan v. United States, 116 Fed. 578,[1] this court again considered a ruling by a lower court upon challenges to jurors for cause, and again the judges disagreed, not upon the principle involved, but upon the extent of its application to the particular facts and evidence presented by the record. In neither of the cases, just cited, however, did it appear that the jurors challenged answered as did the two last whose examinations are given above. The examination of Juror Frantzen certainly showed that he went into the trial of the case with a fixed opinion that the defendant was guilty. He frankly stated that he had such an opinion, though he thought he could lay it aside if the evidence showed the defendant was not guilty. The juror would do his best to disregard the opinion, but he felt he could not lay it aside entirely. He had heard that this defendant had several houses inside the stockade where houses of prostitution were, but did not know whether he had or not. It is true that in concluding his testimony he said he would enter upon the trial without any opinion whatever in regard to this particular charge. But in the light of the specific prior statements made by the juror, his own judgment that he would not be a fair juror appears to us to have been the only proper conclusion that was deducible from what he said, and we think he ought to have been excused upon the challenge. Juror Cahill was even more unfit for service. He knew the facts and had an opinion, and felt that he could not lay his opinion aside. He said later that he had no knowledge of the guilt or innocence of defendant under the charge, but he had "an impression," a "strong opinion," which he would not be able to rid himself of. The district attorney did not resist the defendant's challenge to this juror, but the court carried the examination farther and elicited from the juror statements that he would not allow his prejudice to guide him to a verdict, that he had no prejudice against the United States (he was not asked if he had any against the defendant), and that he would be more lenient as a juror after

[1] 54 C. C. A. 34.

forming an opinion, and would not convict unless satisfied of guilt beyond a reasonable doubt.

We find it impossible to avoid the conclusion that a jury made in part of men whose minds are in such a condition is not impartial. It is possible, of course, that such a jury will be perfectly fair; but the standards by which courts must test impartiality are necessarily those derived from common experiences with practical human nature. So if men start out in a case with fixed opinions of guilt, and fear they cannot disregard them, their mental attitudes are well characterized by the language used by Juror Frantzen when he said he thought he could lay his opinion aside "if the evidence showed that the defendant was not guilty." The burden of proof as to guilt is too apt to be lost sight of before such a jury, and the defendant at the outset, and before a word of evidence is heard, finds himself forced into a trial with the jury strongly against him, and therefore without that full measure of protection which the presumption of innocence should afford him. The question is, therefore, of such a substantial nature that it has received our most earnest consideration in an endeavor to uphold the exercise of the discretionary power of the trial court without infringing upon the constitutional provision which surrounds the exercise of that power, and our conclusion is that there was an abuse of discretion in overruling defendant's challenges, and that because of this error the judgment must be reversed.

If, upon a new trial of the case, the prosecution again offers evidence to show that plaintiff in error was the owner of the property kept and used for purposes of prostitution, as a circumstance tending to rebut this evidence plaintiff in error should be allowed to introduce deeds tending to show legal title in another. Such testimony is proper, although it is not necessary for the government to establish that defendant was the owner of the house, nor is it necessary to show by positive testimony that he was the keeper. It may be found that he was the keeper by his acts and admissions, or by proof that he acted and held himself out as such keeper. If a man leases his house to a woman to be kept as a bawdyhouse for purposes of prostitution, and it is kept for such purposes, with his knowledge, he is guilty as keeper; and by the same principle the agent of an owner who rents a house knowing that it is to be used as a house of prostitution, and that it is so used, may be found guilty as a keeper. 14 Cyc. 489; Kessler v. State, 46 S. E. 408, 119 Ga. 301. We advise, too, that upon a new trial the court should adopt the suggestions as to what constitutes a reasonable doubt made by this court in its opinion remanding the case of Owens v. United States, 130 Fed. 279, 64 C. C. A. 525.

The judgment is reversed, and the cause remanded for a new trial.