STATE, Respondent, v. STEWART, Appellant.

(157 N. W. 1046.)

(File No. 3733.   Opinion filed May 20, 1916.)

1. **Criminal Law—Principal and Accessory—Accessory as Principal, Legislative Power to Abolish Distinction—Statute—Constitution.**

It is within the legislative power to abolish all distinctions which existed at common law between principals and accessorys before the fact, in so far as to render the accessory criminally liable equally with the person actually committing the act; and . held, that Penal Code, Sec. 27, providing that all persons concerned in the commission of crime, whether felony or misdemeanor, and whether they directly commit or aid and abet in the commission of the fact constituting the offense, are prin-

cipals, is not in violation of any constitutional right or privilege.

**2.  Same—Assault and Battery—Assault With Deadly Weapon—Information, Sufficiency as Charging Defendant Personally.**

An information charging that defendant wrongfully, unlawfully, and feloniously, and without justifiable or excusable cause and with intent to do great bodily harm, committed an assault, upon a person named, with a dangerous weapon, to-wit: a loaded rifle, which he shot and discharged at and against the body of the person assaulted with intent, etc., was sufficient as a pleading to charge the accused himself with committing the alleged acts.

**3.  Same—Assault With Deadly Weapon—Evidence—Evidence that Defendant had no Weapon, Competency as Res Gestae—Rebuttal.**

In a trial upon information charging defendant with criminal assault upon another with a dangerous weapon, to-wit: a loaded rifle, which he shot at and against the person assaulted, with intent, etc., held, that evidence that defendant had no rifle or pistol at the time, but that the person alleged to have been assaulted had a rifle, which he attempted to shoot at defendant, that defendant's son had a revolver belonging to defendant, that upon such attempt to assault defendant, the son fired at the person alleged to have been assaulted, and that any injury to him was so caused, was competent, as constituting the res gestae of the act charged. Held, further, that it was competent for defendant to show, in rebuttal of such evidence, that he did not do the act charged; that the distinction in fact between the one who does the wrongful act, and the one who aids or abets its commission, is not abrogated by Penal Code, Sec. 27, in effect making one who aids or abets in the commission of the act a principal.

**4.  Same—Assault With Deadly Weapon—Information—Evidence that Defendant had no Weapon, Variance from Pleading—Statutes—Constitution.**

Under Const., Art. 6, Sec. 7, declaring that in all criminal prosecutions accused shall have the right to demand the nature of the accusation; and Code Cr. Proc., Sec. 240, in effect providing that in a prosecution against one who aided and abetted the commission of the act charged, no additional facts need be alleged in the information other than would be required in an information against the principal, when construed in connection with Sec. 229, Subd. 6, as amended by Laws 1913, Ch. 242, requiring that the offense charged be designated in such a manner as to enable a person of common understanding to know what is intended; and Penal Code, Sec. 27, providing that all persons concerned in commission of crime, whether they directly

commit the act constituting the offense, or aid and abet in its commission, are principals, **held**, that under an information charging that defendant unlawfully, feloniously, and with intent to do great bodily harm committed an assault with a dangerous weapon, to-wit: a loaded rifle, which he shot at a person named, with intent, etc., where the trial court, after stating the state's contention that defendant fired the shot causing the injury, and that the state contended that even though defendant himself did not fire the shot, he aided and abetted another to fire it, and instructing the jury that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals, and are triable and punishable as such, was erroneous, in that it permitted a conviction as a "principal" upon proof of an act entirely different from that charged, to-wit: the act of shooting the party injured by a person other than a defendant; and the conviction will be reversed.

5.  **Same—Information—Evidence, Variance from Pleading.**

An accused can be regularly convicted only of the criminal acts charged, even though the evidence might be sufficient to sustain a conviction for some other distinctive criminal act. So **held**, in determining that shooting a man, and aiding and abetting another who does the shooting, are two different acts, notwithstanding the legal rule that criminal liability is the same in each case.

Appeal from Circuit Court, Meade County. HON. JAMES McNENNY, Judge.

The defendant, Charles Stewart, was convicted of assault with a dangerous weapon, with intent to do great bodily harm, without justifiable cause, and he appeals. Reversed and remanded.

*Harry P. Atwater,* for Appellant.

*Clarence C. Caldwell,* Attorney General, and *Byron S. Payne,* Assistant Attorney General, for the State.

(2) To point two of the opinion, Appellant cited: State v. Gifford, (Wash.) 53 Pac. 709; State v. Morgan, (Wash.) 58 Pac. 215; Const. Art. 6, Sec. 7.

Respondent cited: Code Crim. Proc. Sec. 240; State v. Cassady, 12 Kans. 550; State v. Geddes, 22 Mon. 68, 55 Pac. 919; Rosencranz, v. U. S. 155 Fed. 38, 42; State v. Branson, (Ore.) 56 Pac. 267; State v. Case, (Ore.) 122 Pac. 304; 1 Enc. Pl. & Pr. 7; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686.

(3) To point three of the opinion, Appellant cited: Sec. 135, Jones on Evi. 151; 11 Enc. of Evi. 177.

(4)    To point four of the opinion, Appellant cited: State v. Swenson, (S. D.) 99 N. W. 1115.

Respondent submitted that: If the evidence shows or tends to support the theory that the defendant was aiding and abetting the commission of the offense, the omission of the court to charge in this instruction that the assault must have been committed by the defendant was not prejudicial to him.

SMITH, J.    Appellant was convicted upon an information charging that he—

"did commit the crime of assault with dangerous weapon with intent to do great bodily harm without justifiable or excusable cause as follows: That the said Charles W. Stewart on the 8th day of November, A. D. 1913. * * * did willfully, unlawfully, and feloniously, and without justifiable or excusable cause, and with intent to do great bodily harm, commit an assault upon and about the person of Michael Quick with a dangerous weapon, to-wit, with a rifle, the said rifle then and there had and held in the hands of Charles W. Stewart, which said rifle was then and there loaded with gunpowder and leaden bullets, and which said rifle the said Charles W. Stewart did then and there shoot and discharge at, toward, into, and against the body of the said Michael Quick, with intent then and there on the part of the said Charles W. Stewart to do great bodily injury to the person of said Michael Quick, contrary to the form of the statute," etc.

At the trial it appeared that Michael Quick, the person assaulted, died some time subsequent to the alleged assault; but it was not disclosed that his death had any connection with the assault. The state presented the testimony of but one person who claimed to be an eyewitness, the 10 year old son of Michael Quick, who testified in substance that he lived with his parents on their claim in Meade county, on November 8, 1913, and on that day was with his father, fixing fence on Steve Lijick's place, about two miles north of their own place; that when he first saw the defendant he was on horseback, coming from the south; that his sons, Frank and Walter, were with him on horseback; that, when the defendant came where they were, he shot the witness' father; that he was shooting with a rifle, a long rifle; that the witness counted three times that he shot; that he (the witness) went down to the

creek to get his father some rocks, and when he came back the defendant was still shooting; that he did not go very far; that Frankie Stewart, said, "Mickie, throw them rocks down, or I will kill you with the spade;" that after the shooting the defendant said, "Walter, come on; he's got enough;" that there was blood on his father's shoe; that he saw two holes in the side of the shoe; that Walter Stewart was standing behind his father, and the defendant in front of him; that Walter was shooting with a pistol; that the pistol was not as long as the rifle held by the defendant Stewart; that Walter shot lots of times, he did not count them; that after the shooting the defendant struck his papa with the rifle, and his papa lifted up the posthole digger in front of him and cut his hand; that he saw him hit his father in the face; that the defendant aimed the gun right at his father; that he shot right at him, shooting right straight out in front; that he shot once, and then pointed at his father's foot; that he went to pointing at his foot after that; that Walter was standing behind, shooting at his father with a pistol right in the back. Two medical witnesses testified to the wound in Quick's foot; that it went in the front of the foot, and through the sole of the foot.

The defendant and his two sons testified that the defendant had no rifle or pistol at the time of the encounter; that Michael Quick had a rifle, with which he attempted to shoot at the defendant; that the son Walter had in his possession a revolver belonging to his father, which he had taken with him that day visiting his traps, with which to kill game found in them; that, upon Quick's attempting to assault the defendant with the rifle, Walter fired at Quick with the revolver; and that whatever injuries he received in his foot were the result of shots fired by the boy. There was also the testimony of several other witnesses, strongly corroborating the defendant's testimony that he had no rifle or pistol in his possession when the trouble occurred.

Appellant assigns as error certain rulings in receiving and rejecting evidence, and also alleged misconduct of the assistant prosecuting attorney. A careful examination of the entire evidence satisfies us that, even if erroneous, the rulings are not shown to be prejudicial. The alleged statements by the assistant prosecutor were of such a character, under the circumstances disclosed by the record, as might constitute reversible error. But inasmuch

as the case must be reversed for error in the instructions herein-after referred to, and the statements of counsel are not liable to be repeated upon a new trial, we shall refrain from discussing them. The entire instructions are contained in the printed record, and in the main accurately and correctly stated the law applicable to the crime charged. The court, however, gave the jury the following instruction, which we think was erroneous:

"It is the contention of the state, gentlemen of the jury, that the defendant fired the shot which injured Michael Quick, and that he fired it with intent to injure Michael Quick. They contend, further, gentlemen of the jury, that even though the defendant himself did not fire the shot, that he aided and abetted another, in his presence, to fire the shot; and I charge you, gentlemen of the jury, that under the law of this state all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals, and are triable and punishable as such."

Other portions of the instruction make it clear that the court intended to and did charge the jury that upon this indictment the accused might be found guilty, even though he was not armed with a rifle, and did not fire the shot which injured Michael Quick, if the evidence satisfied them that he aided and abetted the son Walter in the act of shooting and injuring Quick by means of a revolver.

It is the contention of appellant's counsel that the state is bound by the specific allegations of the indictment or information, and that an instruction is erroneous which permits the jury to find the accused guilty as a principal upon proof of an act entirely distinct and different from that charged in the information. Respondent's counsel rely upon section 240, Code of Criminal Procedure, which provides:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must hereafter be indicted, or prosecuted, tried and punished as principals, and no additional facts need be alleged.

in any indictment or information against such an accessory than are required in an indictment against his principal."

Section 27, Penal Code, is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

[1] That it is within the power of the Legislature to abolish all distinctions which existed at common law between principals and accessories before the fact, in so far as to render such accessory criminally liable equally with the person who actually committed the act, cannot be doubted, and such statutes are not in violation of any constitutional right or privilege. Section 7, art. 6, of the state Constitution, known as the Bill of Rights, declares that:

"In all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation against him. * * *"

Respondent contends that the particular offense charged in the information discloses the *nature* of the accusation; that the name of the person upon whom the offense was committed shows the *cause* of the accusation; and that this provision of the Constitution does not require that an information or indictment shall specify the means by which or manner in which the offense was committed. Section 221, Code of Criminal Procedure, amended by chapter 242, Laws of 1913, provides:

"The indictment or information shall contain the title of the action, the name of the court in which it was presented or filed, and the names of the parties. It shall not be necessary to set out in an indictment or information with particularity, the facts relied upon to constitute the offense charged, and it shall only be necessary to allege the commission of the offense in the language by which the crime is usually designated, as in the case of an accusation of * * * that the accused (naming him) did, at a time and place stated, commit the crime of * * * assault with a dangerous weapon with intent to do great bodily harm or to kill upon or against the person of a human being (naming him or her as the case may be) * * * and this form of indictment shall hereafter apply in all prosecutions for the commission of any public

offense and upon the trial it shall be competent to prove the manner in which the crime was committed as fully and as particularly as if all the facts constituting the crime had been fully alleged and set forth in the indictment or information presented or filed."

[2-4] But we are not called upon in this case to determine how far the Legislature may go in prescribing methods of pleading or forms of indictments or information, without violating the constitutional right of the accused to be informed of the nature and cause of the accusation against him. The information charging the accused with the act of shooting Quick was sufficient as a pleading to charge the accused himself with committing the act. The evidence received was competent as constituting the res gestae of the act charged in the information. The state elected and sought to prove that the accused himself shot Michael Quick with a rifle, the very act specially charged in the information. To rebut this evidence it was perfectly competent for the accused to show that he did not do the act charged. The distinction *in fact* between the one who does the wrongful act, and the one who aids or abets its commission, is not abrogated by the statute, even though it may abrogate distinctions as to pleading and criminal liability. And if it be conceded, as held by many decisions cited by respondent and as plainly prescribed by our statute, that under an indictment or information which charges an accused as principal he may be convicted upon evidence which shows that, though he did not himself *do the act described,* he did in fact aid and abet its commission, still it does not follow that the state may charge and prove that the accused himself committed a certain specific act, for example that *he shot another with a rifle,* and then submit to the jury whether or not the accused is guilty of aiding and abetting another in doing an entirely distinct act, for example, shooting the same person with a revolver. That this distinction is a substantial one is perfectly plain, when we reflect that some of the jury may have been convinced that the accused shot the injured person with a rifle, but that he did not aid and abet the son in shooting with a revolver, while the other jurors may have been convinced that the accused *had no rifle,* and did not shoot with a rifle, but were convinced that he aided and abetted the son Walter in an entirely distinct act, viz. shooting with a revolver. We think it entirely clear that any statute,

or any construction of a statute, or any form of pleading which might permit such a mode of procedure as was adopted in this case, would be in violation of the constitutional rights of the accused.

Furthermore, section 240, Code of Criminal Procedure, which provides that no additional facts need be alleged in the information other than would be required in an information against the *principal,* must be construed in connection with section 229, subd. 6, Code of Criminal Procedure, as amended by chapter 242, Laws of 1913, which requires that the offense charged be designated in such a manner as to enable a person of common understanding to know what is intended. In the case at bar, if the accused were to be tried upon the *theory of fact* that he was an accessory, and thus became criminally liable equally with the principal, the act upon which such liability must be predicated would be the act done by the son. It would follow that the act intended to be alleged and proved must be the act of the son, together with proof of the fact that the accused aided and abetted that act. This rule does not require that the evidence as to the manner or means of the act be pleaded, but it does require that the specific act relied upon as the cause of the accusation and the ground of criminal liability shall be the act to be pleaded and proved—and none other —and to justify a conviction the verdict of the jury must find the accused guilty of that act and not another.

[5] It is a rule, so long settled that no authorities are required to sustain it, that the accused can be legally convicted only of the criminal acts charged, even though the evidence might be sufficient to sustain a conviction for some other distinct criminal act. Shooting a man, and aiding and abetting another who does the shooting, are two entirely different acts, notwithstanding the legal rule that criminal liability is the same in each case. As was said in State v. Gifford, 19 Wash. 464, 53 Pac. 709:

"Any departure from the plain provision of the Code, which provides, in substance, for a statement of the facts in the indictment, endangers the liberty of the subject."

No clearer illustration of this danger could be found than to sanction an instruction which would warrant a conviction of the accused under the statutory rule of pleading here invoked. Upon the record before us it could never be determined whether part

of the jury convicted the accused of the act of shooting and acquitted him of aiding the son, or part of them agreed that he abetted the act of the son and acquitted him of doing the shooting. In such case there would be no legal conviction of either act, and yet the instruction given would warrant the jury in returning a verdict of guilty, even though they were hopelessly disagreed as to whether the accused or his son fired the shot which injured Quick. In this connection the fact that criminal liability might be the same in either case is wholly immaterial. The verdict itself would not be the verdict of 12 men. Under such an instruction the jury might readily agree upon a verdict of guilty, without ever reaching an agreement as to the facts. Such a verdict would be a judicial abortion by means of a rule of pleading, and a plain violation of the constitutional rights of the accused.

The order and judgment are reversed, and the cause remanded for further proceedings according to law.