STATE, Respondent, v. ST. PIERRE, Appellant.

(238 N. W. 875.)

(File No. 7098. Opinion filed November 10, 1931.)

W. J. *Hooper,* of Gregory, for Appellant.

M. Q. *Sharpe,* Attorney General, J. F. *Frame,* State's Attorney, of Burke, and H. L. *Bode,* Assistant Attorney General, for the State.

MISER, C. The information on which appellant was convicted charges him with burglary in the third degree in substantially the language of section 4170, subd. 2, Rev. Code 1919, to wit, with the breaking and entry of a building in which property was kept with intent to commit larceny. By various motions appellant sought dismissal of the action on the ground that, if the defendant had been shown to be guilty of any offense, it was of the offense of aiding and abetting in the commission of the burglary charged and not of the offense actually charged, in that it appeared from the undisputed evidence that at all times during the commission of the burglary the defendant was at his home more than three blocks distant.

One Evans had pleaded guilty to the burglary of a pool hall in Bonesteel on February 9, 1929, and had been sentenced to the penitentiary. Thereafter appellant was also charged with the burglary, and Evans was used as a witness against him. Evans testified that a few days prior to the burglary, in passing a window of the pool hall in which the broken glass had been replaced with compo board, appellant spoke of the ease with which the pool hall could be burglarized. They were together all of the evening of February 9th, much of the time in the pool hall. On leaving it about 11:30, Evans and appellant stopped outside the boarded-up

window and were again discussing how easily the pool hall could be entered, when a third party approached, causing them to move on. After drinking together in appellant's home until about 1 a. m., appellant suggested to Evans that if he was going down to steal the cigarettes from the pool hall he had better do it and get back and get to bed. Evans asked appellant if he thought there would be any danger, to which appellant replied, that the danger would be in Evans not keeping his mouth shut after it was done. Evans went to the pool hall, entered through the compo board covered window, and stole eight cartons of cigarettes and a half carton of cigarette papers. When he arrived at appellant's house with the stolen goods, appellant asked him if that was all he got. Being told that it was, appellant then said that it was not hardly worth going in after that many. To this Evans replied that he would go down again, handed appellant the cigarette papers which he put away, and returned to the pool hall. The goods stolen on the second entry Evans took to appellant's home and threw on the floor. Appellant objected to the property being kept in his home, but assisted Evans in putting it in a suitcase. After Evans had buried the suitcase in the snow at appellant's residence, appellant examined the snowdrift and said that, while he could see where the suitcase had been buried, he thought it would be all right there. Several days later appellant and Evans each took two packages of cigarettes from one of the cartons and dried out the balance which had become damp from being kept in the snow, and put them under a bed in appellant's home.

 Appellant claims the corroboration of the testimony of the accomplice, Evans, was insufficient to comply with section 4882, Rev. Code 1919. But other witnesses testified that appellant and Evans were together all the evening of the 9th; were standing together before the compo board window at 11:30; that the stolen property was found in appellant's home; that appellant said when the stolen property was before them in his home, "Zeitner (the proprietor of the pool hall) thinks he is pretty smart, don't he, but that is one time we outsmarted him"; that he made false and contradictory statements as to his movements on the evening of the burglary; that he participated in some division of the stolen property. Under the rule followed in State v. Walsh, 25 S. D. 31, 35, 125 N. W. 295, and State v. Drapeau, 45 S. D. 507, 189 N. W. 305, the evi-

dence was sufficient to permit the question of sufficiency of corroboration to be submitted to the jury.

█ The contention of appellant that there is no evidence that he personally broke and entered the pool hall, but that, at most, he aided and abetted Evans in so doing, is borne out by the record. Was he then entitled to an acquittal of the offense with which he was charged?

Section 4737, Rev. Code 1919, is as follows: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment against his principal."

Appellant relies on State v. Stewart, 37 S. D. 263, 157 N. W. 1046, 1049. He calls attention to the following language therein: "Shooting a man, and aiding and abetting another who does the shooting, are two entirely different acts, notwithstanding the legal rule that criminal liability is the same in each case."

Shooting a man one's self is entirely different from aiding and abetting another who does the 'shooting. So also is committing forcible rape upon a woman different from aiding and abetting another in committing such a crime; yet in State v. Rathjin, 46 S. D. 412, 193 N. W. 247, 249, in which case appellant, convicted of that crime, also cited State v. Stewart, supra, and in which case defendant, no less than appellant in the case at bar, was informed against as a principal, the court, in affirming that conviction, said: "From all that appears in the printed record Rathjin may have been convicted because he was accessory to the acts of Seubert."

Section 550, title 18, U. S. Code, Criminal Code, § 332 (18 USCA § 550), is as follows: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal. (R. S. §§ 5323, 5427; Mar. 4, 1909, c. 321, § 332, 35 Stat. 1152.)"

One of the most recent decisions construing this section is by the Circuit Court of Appeals, Seventh Circuit, Melling v. U. S.,

25 F. (2d) 92, 93. That court said: "Under this and similar statutes convictions of single defendants, who were in truth only accessories before the fact, but charged as principals, have been quite generally sustained."

It cited, among others, People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 641, 8 Am. St. Rep. 701. The Bliven Case contains an interesting discussion of the reason underlying, and the historical development of, statutes similar to our section 4737. That reason it quotes from the preamble of 11 and 12 Victoria (chapter 46, § 1) to be that "of relaxing the technical strictness of criminal proceedings and to insure the punishment of the guilty without depriving the accused of any just means of defense." The New York Court of Appeals, in this much-cited case, says: "If the case were a civil one, a pleading which alleged the doing of an act by the defendant would be sustained upon proof of the doing of the act by his agent, or by any one whom he advised or requested to do it, and it is difficult to see why, under an indictment charging the defendant with the commission of a crime, proof showing its commission by one whom he advised and procured to do it would not prove his own guilt of the act charged." See, also, Scharman v. State, 115 Neb. 109, 211 N. W. 613, 614; note 28 to 18 USCA § 550; 31 C. J. 740; Bish. Crim. Proc. (2d Ed.) vol. 1, § 332 (6), vol. 3, § 4.

Moreover, a careful reading of State v. Stewart, supra, discloses no reason for giving a meaning to section 4737, Rev. Code 1919, different from the plain import of its language. The error pointed out in the Stewart Case was that the state with great particularity alleged one offense and with equal particularity proved another. The information charged Stewart with an assault with a dangerous weapon, "to-wit, with a rifle, the said rifle being then and there had and held in the hands of Charles W. Stewart, which said rifle * * * the said Charles W. Stewart did then and there shoot and discharge * * * against the body of the said Michael Quick, with intent then and there to do great bodily injury to the person of said Michael Quick." The proof, however, showed that Quick was shot, not by a rifle in the hands of Charles W. Stewart, but by a revolver in the hands of Stewart's son.

It is also true that in the Stewart Case, this court cited State v. Gifford, 19 Wash. 464, 53 P. 709. But this court did not follow

the Gifford Case to its full extent. Moreover, in Rosencranz v. U. S. (C. C. A.) 155 F. 38, 42, it was pointed out that the Supreme Court of Montana, in State v. Geddes, 22 Mont. 68, 55 P. 919, expressly held State v. Gifford to be contrary to recent authority and the earlier discussion of the Washington Court in State v. Duncan, 7 Wash. 336, 35 P. 117, 38 Am. St. Rep. 888, to be in harmony with authority. It is also to be noted that the Supreme Court of North Dakota in State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686, construing the identical statute, now our section 4737, commends the reasoning of State v. Duncan, overruled in State v. Gifford. Finally our own court ,in State v. Rathjin, supra, though State v. Stewart, supra, was cited therein, held as above stated. In the case at bar there was, unlike in the Stewart Case, no variance between the crime charged and the proof as made.

The judgment and order appealed from must be, and they are, affirmed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

ROBERTS, J., disqualified and not sitting.