[No. 1003. Decided December 4, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR DUNCAN, *Appellant*.

CRIMINAL LAW — CONTINUANCE — RIGHT OF ACCUSED TO BE PRESENT — CROSS-EXAMINATION OF ACCUSED — LARCENY — POSSESSION OF STOLEN PROPERTY — INSTRUCTIONS.

The granting of a continuance, in a criminal prosecution, without the personal presence of the accused, is not in violation of the constitutional provision giving the accused the right to appear and defend in person and by counsel.

Where the accused in a criminal prosecution appears as a witness in his own behalf, and the whole purpose of his testimony is to show that he is not guilty, although he is not asked the direct question as to whether or not he is guilty, it is proper cross examination, as tending to affect the credibility of the witness, to question him relative to his flight soon after the crime was committed. (STILES, J., dissents.)

When the defendant in a criminal prosecution takes the witness stand, he assumes the character of a witness; and as such is subject to be contradicted, disputed, or impeached, the same as any other

witness; and cross examination for that purpose is not prohibited by the constitutional provision that "no person shall be compelled in any criminal case to give evidence against himself."

Under § 1189, Code Proc., abrogating the distinction between an accessory before the fact and a principal, a defendant may be convicted under an information charging him with the commission of a larceny as principal, although the evidence shows that he was not present at the time the taking was done, but advised and counseled it with the intention of receiving the benefits of the property taken.

Where a defendant has requested the court to charge the jury that "the bare possession of stolen property, alone, is not sufficient to sustain a verdict of guilty," it is not error, as being a violation of the constitutional prohibition against judges charging the jury with respect to matters of fact, for the court to give the instruction with the following addition: "It is only a circumstance tending to show guilt."

*Appeal from Superior Court, Spokane County.*

*Hyde, Glass & Reagan,* for appellant.

*James E. Fenton,* Prosecuting Attorney, and *James A. Haight,* for The State.

The opinion of the court was delivered by

Scott, J.—The defendant, Arthur Duncan, was convicted of the crime of larceny, and he appealed to this court, alleging as error the granting of a continuance of the cause from the 18th to the 24th of March without his personal presence. It is claimed that this is a violation of § 22, art. 1 of the constitution, which provides that, "in criminal prosecutions, the accused shall have a right to appear and defend in person and by counsel." We are of the opinion, however, that this provision has reference to matters connected with the trial, and not to anything preliminary thereto, and the granting of a continuance is not a part of the trial, but is a preliminary matter. Counsel for the prisoner was present at the time said order was granted, and objected, but not on the ground that the defendant was absent. It does not appear that the de-

22—7 WASH.

fendant was subjected to any injustice or injury in the premises.

Upon the trial of the cause the defendant took the stand and testified in his own behalf. Upon his cross examination, the prosecuting attorney was permitted to ask him questions relative to his having fled soon after the crime was committed for the purpose of evading the prosecution. It is contended that this was erroneous upon two grounds: (1) Because not proper cross examination; (2) because it was a violation of § 9, art. 1 of the constitution of the state, which provides that "no person shall be compelled in any criminal case to give evidence against himself."

As to the first ground, it is contended that it was improper cross examination, because in the direct examination of the defendant he was only questioned touching his movements on the night prior to his arrest and on the morning of his arrest, while the questions relating to his flight from the state and absence from the trial of his brother, who was indicted with him, related to matters happening subsequent thereto. In his direct examination the defendant had been questioned generally with regard to his connection with the crime charged, and testified in relation to it. He was not asked the direct question as to whether or not he was guilty, nor did he in specific words deny his guilt, but the whole purpose of his testimony was to show that he was not guilty, and we are of the opinion that the questions complained of were proper as tending to affect the credibility of the witness, the fact of flight was some evidence of guilt, and, as such, tended to show that the defendant had testified untruthfully in endeavoring to show that he was not guilty. It had a direct bearing upon the truthfulness of his testimony in chief.

It is contended that the jury would not stop with considering the fact of flight as affecting the credibility of the defendant only, but would consider it as evidence of his

being guilty of the crime charged. It is doubtful whether a dividing line can be drawn under the facts of this case, for the only way it could affect his credibility was in showing that he was guilty of the offense charged, and that consequently the testimony he had given in his direct examination to the effect that he was not guilty was untrue. But, be this as it may, no error can be founded in the premises, for the instructions given by the court to the jury that the fact of flight might be taken as evidence of guilt were given at the request of defendant. For instance, defendant requested the court to charge as follows:

"The jury may consider as one of the circumstances in this case the fact that defendant did not appear when his case was called for trial a few months after his arrest; but the fact that defendant fled is not conclusive proof of his guilt, and in the absence of other evidence is not sufficient to authorize a verdict of guilty. In considering the circumstance of flight, the jury should consider the reasons why defendant fled, his temperament, his surroundings, the advice of his friends, the urgings of his family, and all that influenced him to flee."

And the court gave this instruction with others relating thereto, requested by the defendant; consequently, if a distinction can be drawn between considering such evidence only as affecting the credibility of the defendant and not as evidence of his guilt of the crime charged, the defendant is not in a position to take advantage of it in this case. Nor was such cross examination a violation of the constitutional provision aforesaid. When a defendant in a criminal case takes the witness stand, he assumes the character of a witness, and as such is subject to be contradicted, disputed, or impeached, the same as any other witness. Sec. 1307, Code Proc.; *Boyle v. State*, 115 Ind. 469 (5 N. E. Rep. 203); *Thomas v. State*, 103 Ind. 419 (2 N. E. Rep. 808); *State v. Pfefferle*, 36 Kan. 90 (12 Pac. Rep. 406).

It is further contended that the court erred in charging

the jury that the defendant might be convicted if, though not standing by at the time the taking was done, he advised and counseled it with the idea and with the intention of receiving the benefits of the property taken, on the ground that this was in effect telling the jury that the defendant might be found guilty under the information charging him as principal, if the evidence showed him to have been an accessory before the fact.    Sec. 1189, Code Proc., provides that—

"No distinction shall exist between an accessory before the fact and a principal, or between principals in the first and second degree, and all persons concerned in the commission of an offense, whether they directly counsel the act constituting the offense, or counsel, aid and abet in its commission, though not present, shall hereafter be indicted, tried and punished as principals."

Under a statute substantially like this the supreme court of California has held that the distinction between an accessory before the fact and a principal is abrogated, and that an accessory before the fact must be prosecuted, tried and punished as principal, and that it is sufficient to charge such accessory directly as principal. *People v. Outeveras*, 48 Cal. 19; *People v. Rozelle*, 78 Cal. 84 (20 Pac. Rep. 36).

It is contended that charging the defendant as principal does not sufficiently put him upon his guard and advise him of the facts to be proven against him, where it is sought to show that he was an accessory before the fact but not a direct participant in the crime itself, and that consequently an innocent man might be surprised in a trial by the proof offered, and not have sufficient opportunity to prepare therefor in consequence of his not having known in advance the facts to be shown against him.    But we doubt if there is any more foundation for this contention than there would be where the effort was to show the defendant a principal in the commission of the crime charged. For instance, in the crime charged here, that of larceny of

a steer belonging to one Neal Smythe, it was possible for the offense to have been committed in so many different ways and under such a variety of circumstances as principal, even, that in the case of an innocent man the formal charge itself might not afford any accurate information of the facts and circumstances to be shown; but in such a case, where a party is prosecuted as principal, it is not contended that there need be anything more than a formal charge. It is not necessary to set up the evidence to be offered, nor the particular facts to be established. For instance, as to the particular part of the county where the property was stolen, whether taken in the night or in the day time, how taken, or how converted to the use of the defendant, the kind of property other than as one steer, etc., as to all of which the evidence might widely vary in different cases and yet be legitimate evidence under an information couched in practically the same words charging the defendant as principal. And until it is made necessary by law, in the case of a prosecution for a crime, to set up the particular acts to be proven against a principal, it is not necessary to set the same forth in the case of an accessory before the fact.

The defendant requested the court to give the following instruction: "The jury are instructed that the bare possession of stolen property alone is not sufficient to sustain a verdict of guilty," which the court gave, but added the following: "It is only a circumstance tending to show guilt." It is contended that this is error, as being a violation of § 16, art. 4 of the constitution, which provides that "judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." It is not claimed, however, that it is not a correct statement of the proposition, and it is a sufficient answer to say that as the defendant requested an instruction upon this point he cannot complain upon the ground stated, be-

cause the court gave a more complete statement than he had requested.

Judgment affirmed.

DUNBAR, C. J., and HOYT, J., concur.

ANDERS, J. (*concurring*).—I think the cross examination of the defendant in this case was not carried beyond legitimate bounds. Whenever a defendant becomes a witness to disprove a criminal charge, he thereby subjects himself to the same liabilities in cross examination as does any other witness, and may be cross examined as to any pertinent matters, even although such testimony may tend to criminate him. The statute authorizing parties charged with offenses to testify in their own behalf was never intended to enable them to testify as to facts tending to disprove guilt, and, at the same time, to suppress other facts tending to shake their credibility, or to throw additional light upon, or give color to, facts and circumstances detailed in the examination in chief. The object of all testimony is to elicit the truth; and experience has shown that it is only by cross examination that the whole truth can be discovered. No one can be compelled to give evidence against himself, nor can any one accused of crime be compelled to testify in his own behalf, and, if he does not see fit to do so, it is the duty of the court to charge the jury that no presumption of guilt arises therefrom. But when a person charged with the commission of an offense voluntarily assumes the character of a witness, he waives his constitutional protection to the extent, at least, of being cross examined according to the rules of evidence. And if he states facts tending to prove his innocence, it seems to me that it would be contrary to every consideration of justice to permit him to refuse to state other facts connected with the offense which might tend to show the falsity of his testimony in chief. No one would contend

that he could not be compelled to answer whether he had not made declarations out of court contrary to his testimony on the witness stand, and I am unable to understand, upon principle or reason, why he should be permitted to refuse to state whether he had not acted contrary to his declarations as a witness.

The objection that the court's modification of the instruction requested by the defendant was in contravention of § 16, art. 4 of the state constitution, is without foundation, for the reason that all that was added thereto was plainly implied in the instruction as originally presented to the court. I see no error in the record, and think the judgment ought to be affirmed.

STILES, J. (*dissenting*).—It is a general rule of evidence, to which the courts of this country have yielded adherence since *Railroad Co. v. Stimpson*, 14 Pet. 461, that a party has no right to cross examine any witness except as to facts and circumstances connected with the matters stated in his direct examination; and if he wishes to examine him as to other matters he must do so by making the witness his own, and calling him as such. 1 Greenleaf, Evidence, § 445; 1 Wharton, Evidence, § 529; 1 Rice, Evidence, p. 586; Rapalje, Law of Witnesses, § 246.

I think this court, in the foregoing opinions, means to sustain this rule; but it holds that the questions asked of the defendant by the prosecution were rightfully asked because they tended to break down his credibility as a witness. But I see nothing of that kind in it. The defendant had testified to nothing as to his whereabouts after the day of the alleged crime; but merely attempted to account for the way in which he came to be at the place where the steer was killed. It was perfectly competent, then, of course, for the state to test his credibility as an ordinary witness in any of the well recognized modes of making

such a test.   But instead of that it was allowed to go into
an independent examination into a matter wholly foreign
to anything that had been testified to.   Flight is a circum-
stance which may tend to show a consciousness of guilt, and,
therefore, guilt itself, thereby negativing the legal conclu-
sion that a defendant is not guilty.   If a defendant testify
on the stand to the legal conclusion that he is not guilty,
then the circumstance of flight would tend to contradict
his testimony, but it would not affect his credibility as a
witness, that is, the probability that he would speak the
truth.   The argument of the court is, that although this
defendant did not say he was not guilty, the very fact that
he testified was an assertion of that conclusion; but the
obvious answer to that is, that witnesses do not testify
to the guilt or innocence of a prisoner, but to facts from
which the legal conclusion, one way or the other, may be
drawn.   The law said, for this defendant, that he was not
guilty until proven so, and in giving him the privilege of
testifying it did not offer him a trap wherein, being caught,
confessions of guilt might be wrung from him.   As well
might it be contended that a prisoner testifying to an *alibi*
could be asked on cross examination if he had not stated,
out of court, that he actually committed the crime charged.
Precisely such an attempt was made under the guise of an
impeachment of the witness in *People v. Yeaton*, 75 Cal.
415 (17 Pac. Rep. 544), and the judgment was reversed
by a unanimous court for the error committed in compel-
ling the witness to answer.

   The constitutional provision allowing defendants in crimi-
nal cases to testify was undoubtedly intended to benefit the
accused; if it had been for the benefit of the state it would
have provided that the state might call him.   But if the
prosecution càn keep back the evidence which it has in its
possession, showing flight, for instance, until the defendant
is on the stand, and then compel him to testify to it, it is

thereby permitted to make him its own witness to prove a
material fact in its own case, which the constitution ex-
pressly forbids.   It seems to me that the inevitable tend-
ency of this decision must be either to drive all criminal
defendants out of the witness chair, and thus annul the
constitution; or to subject every such defendant, who may
testify to the most insignificant fact in his own behalf, to
account for himself in every conceivable way, even to ad-
mitting the very substance of the offense charged, on pain
of prosecution for purjury if he fails to tell the truth.   The
constitutional guaranty is, that no person shall be compelled
in any criminal case to give evidence against himself.   To
give evidence is to state facts, and to be compelled to state
the fact that he ran away is to compel a prisoner to give
evidence against himself.

"These statutes (permitting accused persons to testify),
however, cannot be so construed as to authorize compulsory
process against an accused to compel him to disclose more
than he chooses; they do not so far change the old system
as to establish an inquisitorial process for obtaining evi-
dence; they confer a privilege which the defendant may
use at his option.   If he does not choose to avail himself
of it, unfavorable inferences are not to be drawn to his
prejudice from that circumstance; and if he does testify,
he is at liberty to stop at any point he chooses, and it must
be left to the jury to give a statement, which he declines
to make a full one, such weight as, under the circumstances,
they think it entitled to; otherwise the statute must have
set aside and overruled the constitutional maxim, which
protects an accused party against being compelled to testify
against himself, and the statutory privilege becomes a snare
and a danger."   Cooley's Const. Lim. (5th ed.), p. 386.

The correct rule is laid down in *Boyle v. State*, 105 Ind.
469 (5 N. E. Rep. 203), where it is said:

"The cross examination of a witness must be confined
to the subject opened by direct examination.   This settled
rule does not, however, restrict the cross examination to

the specific facts developed by the direct examination, but does confine it to the subject of that examination. Where a subject is opened by the direct examination, the cross examining counsel may go fully into the details of the subject, and is not confined to the particular part of it embraced within the questions asked upon the direct examination. . . . In this instance the accused, when on the witness stand, had given account of his movements upon a day named, and it was proper to go fully into the subject upon cross examination, and the state was not confined to the particular period of time designated in the questions asked on direct examination.''

Deeming this a very important matter in the administration of criminal law, and that the decision is contrary to all authority, I have thought it best to record my dissent at length.