## ORMSBY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 17, 1921.)

No. 3513.

**1. Judgment ⬦829(1) — Records of Supreme Court of District of Columbia are entitled to same credit as those of state courts.**

The Supreme Court of the District of Columbia is a court of the United States, and its records and judicial proceedings are entitled to the same faith and credit as are given to courts of the several states.

**2. Habeas corpus ⬦30(1) — Not granted to review errors by court having jurisdiction.**

Petitioner is not entitled to be discharged on writ of habeas corpus on account of errors or irregularities in the proceedings of the trial court, either at the trial or otherwise, if that court had and still retains jurisdiction of the subject-matter of the prosecution and of the person of defendant.

**3. Libel and slander ⬦152(1) — Indictment held to show communication was not privileged as performance of legal duty.**

An indictment in the Supreme Court of the District of Columbia for libel, contrary to Code D. C. §§ 815–818, providing the punishment therefor, but not defining libel, so that common-law libel is intended under Code, § 1, which indictment alleged that the libelous words were not only false, scandalous, malicious, and defamatory, but were uttered with the unlawful and malicious intention to vilify, defame, scandalize, and disgrace the subject of the publication, shows that the alleged libel was not privileged as the performance of the legal duty required by Criminal Code, § 146 (Comp. St. § 10316), to declare to a public official knowledge of the commission of an offense, though the alleged libel was a communication to the district attorney that an attorney had procured defendant's indictment by perjured evidence.

**4. Habeas corpus ⬦30(2) — Court having jurisdiction can determine sufficiency of indictment without review by habeas corpus.**

Where the Supreme Court of the District of Columbia had jurisdiction of the person of accused and of the subject-matter of the indictment, it had jurisdiction to determine the sufficiency of the indictment, and its action in sustaining the indictment is not reviewable by habeas corpus, but only on writ of error.

**5. Habeas corpus ⬦30(1) — Record as to trial dates held to show irregularities not reviewable.**

Allegations in a petition for writ of habeas corpus that the trial court before which petitioner was convicted first held the indictment showed a privileged communication, and on a second trial held the contrary, sustained only by discrepancy as to dates in calendar and journal entries, *held* not to show a termination of jurisdiction before conviction, but to show at most only an error or irregularity in the proceedings, which cannot be reviewed on habeas corpus.

**6. Criminal law ⬦979(2) — Record held not to show indefinite postponement of sentence.**

The record of the criminal proceedings in which petitioner for habeas corpus was convicted, which showed that sentence was not imposed after motions in arrest and for new trial were denied, but that when the case was continued to the following term a motion by defendant to vacate was pending, and that, when further continuance was granted to a subsequent term, proceedings to determine the insanity of accused were pending, does not show an indefinite postponement of sentence, which defeated jurisdiction of the court to impose sentence after the release of accused from the hospital for the insane.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

273 F.—62

**7. Criminal law ⟨key⟩977(3)—Court can postpone sentence pending motion to vacate denial of new trial or to consider sentence.**

It is competent for the trial court to postpone the imposition of sentence after conviction to give opportunity for the consideration of defendant's motion to vacate the order overruling his motions in arrest of judgment and for new trial, or to enable the judge to better satisfy his own mind as to what the punishment ought to be.

**8. Criminal law ⟨key⟩979(2)—Absence of defendant when continuance is granted does not terminate court's jurisdiction.**

The presence of defendant is not imperatively required at the making or hearing of motions which form no part of the trial proper and therefore the absence of defendant when an order continuing the case for the term was granted does not terminate the court's jurisdiction.

**9. Criminal law ⟨key⟩981(2)—Special proceeding, and not general inquisition, is applicable after conviction, but before sentence for crime.**

To determine the insanity of accused, after his conviction, but before sentence, proceedings under Code D. C. § 927, which is contained in the chapter devoted to criminal procedure, and in terms expressly relates to insane criminals, is applicable, rather than proceedings under the general provision for inquisitions in equity contained in Code, § 115a.

**10. Criminal law ⟨key⟩978—District of Columbia proceedings to determine sanity of convicted person are constitutional.**

Proceedings under Code D. C. § 927, for the determination of the sanity of a person convicted of crime, but not yet sentenced, when considered in connection with the following sections, are constitutional.

**11. Criminal law ⟨key⟩981(2)—Statute requiring notice of restoration to sanity of person charged with crime applies to one convicted, but not yet sentenced.**

Code D. C. § 929, requiring notice of restoration to sanity of a person confined in a hospital for the insane, charged with crime and subject to be tried therefor, or undergoing sentence therefor, to be given to the justice holding the criminal court, applies where accused had been convicted, but not yet sentenced, though that case is not within the express words of the section.

**12. Criminal law ⟨key⟩981(2)—Proceedings to determine insanity of accused not limited to applications on behalf of accused.**

Code D. C. § 927, providing that when a person is indicted, and before trial or after verdict, prima facie evidence is submitted that accused is then insane, the court may impanel a jury to determine his sanity, is not limited to cases where the application for the hearing is made on behalf of accused, and proceedings thereunder may be instituted by the prosecuting attorney.

**13. Jury ⟨key⟩70(1)—Discharge of District of Columbia jurors for term does not prevent impaneling valid jury.**

The fact that a jury for the term of the Supreme Court of the District of Columbia had been discharged, when suggestion was made that accused was insane, does not prevent the impaneling of a valid jury to try that issue under Code D. C. § 927, which expressly provides that, if the regular jurors have been discharged, the court may cause a sufficient number of jurors to be drawn to inquire into the sanity of accused.

**14. Criminal law ⟨key⟩981(2)—Record of proceedings to determine insanity of accused held not to negative libelous intent.**

A petition by the district attorney instituting proceedings under Code D. C. § 927, to determine the sanity of accused, after his conviction for libel and before sentence, which stated that the conduct of defendant had impressed petitioner as peculiar, and that since the trial petitioner had formed the opinion accused was insane, and the determination by the jury

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that accused was insane at the time of inquiry, does not amend the criminal charge in the indictment, so as to negative the existence of criminal intent.

**15. Criminal law ⬮979(2)—Release by hospital does not defeat jurisdiction to sentence on conviction before commitment.**

Where accused had been found to be insane after his conviction, but before sentence, and had been committed to a government hospital for the insane, his release from the hospital by the superintendent thereof without the required notice to the judge of the criminal court having been given does not defeat the criminal court's jurisdiction thereafter to impose sentence on accused.

**16. Criminal law ⬮979(2)—Proceedings establishing sanity in another district held not to defeat jurisdiction to impose sentence on conviction before commitment.**

Where accused was released from the government hospital for the insane, to which he had been committed after conviction, but before sentence by the Supreme Court of the District of Columbia, went into another judicial district, and there engaged in litigation in the United States District Court, a determination by the latter court that accused was competent to conduct that litigation in his own behalf does not affect the jurisdiction of the Supreme Court of the District of Columbia over the prosecution or the person of accused.

**17. Criminal law ⬮979(2)—Record held not to show criminal court had surrendered jurisdiction to impose sentence on conviction before commitment for insanity.**

The fact that several years had elapsed after accused had been released from the hospital for the insane, to which he had been committed by the Supreme Court of the District of Columbia, after his conviction for a crime, but before sentence, does not show that the court had surrendered jurisdiction to impose sentence, where it appeared that notice of the release of accused was not given to the court as required, and there was no showing that the court was advised of such release until about the time its bench warrant for accused was issued.

Appeal from the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Habeas corpus proceeding by George F. Ormsby to procure his discharge from custody on a bench warrant issued by the Supreme Court of the District of Columbia. From the order discharging the writ, petitioner appeals. Order modified and affirmed.

George F. Ormsby, of Cincinnati, Ohio, pro se.

Richard T. Dickerson, Asst. U. S. Atty., of Cincinnati, Ohio.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On April 5, 1909, petitioner, George F. Ormsby, was indicted in the Supreme Court of the District of Columbia on a charge of criminal libel. He pleaded not guilty; his trial resulting in a verdict of guilty rendered on May 24, 1910. Motions for new trial and in arrest of judgment were overruled July 15, 1910. Sentence has never been imposed. Pending application to set aside the order overruling motion for new trial and motion in arrest of judgment, the attorney of the United States for the District of Columbia filed in the criminal case his verified petition (supported

by affidavits of others), setting forth his opinion that the defendant (petitioner here) was of unsound mind, and asking for a judicial inquiry into his sanity, to the end that, should he be found insane, the imposition of sentence might be suspended and he committed to the government hospital for the insane for treatment. The petition was granted, and trial by jury had upon the question of sanity, resulting in a verdict, on June 21, 1911, finding the defendant to be of unsound mind. A copy of the verdict was forwarded to the Secretary of the Interior, and under the order of that officer defendant was (apparently on June 22, 1911) committed to the government hospital for the insane in accordance with the laws of the District of Columbia. He was detained at that hospital until November 1, 1917, when he was permitted by the medical authorities of the hospital to leave that institution. It does not appear, however, that notice that defendant had been restored to sanity was given to the court in which defendant had been tried on the criminal charge as well as upon the issue of sanity; nor was the defendant delivered to that court.

It is asserted by petitioner, and without denial, that upon leaving the hospital he came directly to Ohio and has ever since remained in that state. On August 31, 1920, the Supreme Court of the District of Columbia issued in the criminal cause its bench warrant to the marshal for the District of Columbia, commanding petitioner's production before that court. While in custody, by virtue of the removal proceedings, this proceeding in habeas corpus was instituted in the District Court for the Southern District of Ohio.[1] Upon due hearing that court found that petitioner was "lawfully being restrained of his liberty for the purpose of being removed to the jurisdiction of the Supreme Court of the District of Columbia, in compliance with a bench warrant heretofore issued by said court, for the purpose of requiring the said petitioner, George F. Ormsby, to appear before said court for sentence in case No. 26,501 of the criminal docket of said court." The writ of habeas corpus was accordingly discharged. This appeal is from that order denying the writ. Pending appeal, the court below detained petitioner in its custody.

It appears that petitioner's indictment and prosecution for libel grew out of a situation which we state only in briefest outline: Petitioner's wife had obtained in a state court of Ohio a decree of divorce from petitioner, with custody of the infant son of the parties. Petitioner claims this decree was obtained by fraud and imposition upon the Ohio court, and was void for lack of jurisdiction. Petitioner was indicted in the Supreme Court of the District of Colum-

---

[1] Apparently in connection with the removal proceedings under the bench warrant, petitioner was by the court placed in the custody of his own counsel; and the writ of habeas corpus was directed to that custodian. Petitioner appeared personally on the hearing under the writ. While the record contains no return by the custodian, and presumably no formal return was filed, it sufficiently appears here that on the hearing of the petition the Government justified petitioner's detention by virtue of his conviction under the indictment for libel and the bench warrant thereon. Among the other grounds of error assigned here is that the respondent's return is not sufficient in law to justify petitioner's detention.

bia for alleged abduction of this child, in taking him from Washington, D. C., to Boston, Mass. The alleged libel which is the subject of the indictment here in question consisted in a communication by petitioner to the committee on grievances (said to be a statutory tribunal established by the Supreme Court of the District of Columbia), charging a practicing attorney of that district, who was asserted to be representing petitioner's wife in the marital troubles between those parties, with having procured the indictment of petitioner on the charge of abduction, by making false and fraudulent representations to the United States attorney of the District of Columbia, and by causing and procuring the giving of false and perjured testimony before the grand jury which had the abduction charge under consideration, and with having by improper, dishonest, and corrupt means aided in procuring the arrest of petitioner in Boston, his confinement there, the taking of the child from his custody, and his removal to Washington to answer the indictment for abduction.

The petitioner contends that the warrant for his production before the Supreme Court of the District of Columbia is void for a variety of reasons; those which we deem it important to consider being: (1) That the original indictment for libel was void, as alleging the performance of a statutory and constitutional duty to make a true report of crime to the proper authority, the report thus being a privileged communication, and not a crime; that the libel charge has been discontinued and the jurisdiction of the District of Columbia court lost for a variety of reasons, including: (2) That his trial in the criminal prosecution for libel ended with the overruling of his motions for new trial and in arrest of judgment on July 15, 1910; that no further proceeding was ever had in the libel prosecution, nor were any entries of continuance made in the presence of petitioner, and that jurisdiction over the case thus ended with the close of the term in October, 1910; and that the attempted protracting of the trial on the indictment for libel violates the constitutional guaranty of speedy trial under article 6 of the Amendments to the federal Constitution. (3) That section 927 of the District of Columbia Code, under which the inquisition into petitioner's sanity was had, applies to a criminal case only when the accused wishes to plead insanity, which was not the case here; that section 115a, of the Code furnishes the only applicable authority for such inquiry; and that this last-named section recognizes inquisitions into sanity as civil actions, which are thus not triable in a criminal court, and that the prosecution for libel has thus not been kept alive by valid action. (4) That the action of the United States attorney of December 6, 1910, in instituting the inquiry into petitioner's sanity, amended the criminal prosecution for libel into the claim that the alleged libel was not due to criminal intent, but to insanity, thereby discontinuing the criminal charge, if then still in existence. (5) That in the petition for inquiry into the sanity of the accused it was alleged that the petitioner was insane during his trial, amounting to an allegation that the trial was void, and that the court accepted that allegation, thereby working a discontinuance of the criminal action; that the trial of petitioner's sanity was void for the further

reason that the jury for the term had been discharged, and no valid jury was therefore possible; that under the finding of insanity he was in effect sentenced to the hospital and there confined, under the libel charge, for six years, which is longer than the maximum period imposable for libel. (6) That since leaving the hospital for the insane, in November, 1917, petitioner has remained in Ohio, with the full consent of the authorities of the United States, and that meanwhile the District Court for the Southern District of Ohio has, in litigation in said court to which petitioner was a party, adjudged petitioner free from the disability of insanity and as having capacity to sue without guardian in such litigation. (7) That the bench warrant of August 30, 1920, was procured to be issued by certain defendants in the litigation in the District Court for the Southern District of Ohio, in order to obstruct the administration of justice in that district and to protect such parties in a conspiracy to defraud the United States.

[1] Coming to consider the scope of this hearing on habeas corpus: The Supreme Court of the District of Columbia is a court of the United States, and has the same jurisdiction as the federal Circuit and District Courts, as well as certain further jurisdiction. Code D. C. § 61; In re McFarland, 30 App. D. C. 365; Embry v. Palmer, 107 U. S. 3, 10, 2 Sup. Ct. 25, 27 L. Ed. 346. Its records and judicial proceedings are entitled to the same faith and credit as are given to the courts of the several states. Embry v. Palmer, supra.

[2] Under the well-settled general rule prevailing in the courts of the United States, if the Supreme Court of the District of Columbia had and still retains jurisdiction of the subject-matter of the prosecution in question and of the person of the petitioner, the latter is not entitled to be discharged on account of errors and irregularities in the proceedings of the trial court, either on the trial or otherwise. Questions of mere error and irregularities are generally reviewable only by writ of error or certiorari, for which a writ of habeas corpus is not a substitute. The questions before us are practically limited to such as go to the jurisdiction of the Supreme Court of the District. Ex parte Carll, 106 U. S. 521, 1 Sup. Ct. 535, 27 L. Ed. 288; Ex parte Yarbrough, 110 U. S. 651, 653, 654, 4 Sup. Ct. 152, 28 L. Ed. 274; Stevens v. Fuller, 136 U. S. 468, 477, 10 Sup. Ct. 911, 34 L. Ed. 461; Henry v. Henkel, 235 U. S. 219, 229, 35 Sup. Ct. 54, 59 L. Ed. 203; Glasgow v. Moyer, 225 U. S. 420, 428, 429, 32 Sup. Ct. 753, 56 L. Ed. 1147.

[3] 1. *The Sufficiency of the Indictment.*—The Code of the District of Columbia (sections 815–818) provides the punishment for libel, defining publication, justification, etc., but not libel itself. Common-law libel is thus meant. Code, § 1. The indictment was returned by the grand jury and filed in open court. The contention that it was void as alleging the performance of a statutory and constitutional duty is predicated upon section 146 of the Criminal Code of the United States (Comp. St. § 10316), which makes it misprision of felony for one having knowledge of the commission of a felony cognizable by a federal court to fail to declare the same to some one in civil or mil-

itary authority under the United States (applied in Matter of Quarles, 158 U. S. 532, 15 Sup. Ct. 959, 39 L. Ed. 1080), and upon the doctrine of In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, where a deputy United States marshal was discharged on habeas corpus from arrest, under a state statute, for a homicide committed in defense of Mr. Justice Field from deadly assault, and upon the ground that the homicide was committed by the accused in the performance of a duty owing to the United States. But the indictment before us is clearly inconsistent with an inference that the asserted libel was a privileged communication or an act done in the performance of a legal duty, because of the allegation in the indictment that the libelous words charged were not only false, scandalous, malicious, and defamatory, but were uttered with the unlawful and malicious intention to vilify, defame, scandalize, and disgrace the subject of the publication.

[4] Apart, however, from this consideration, the District Court had jurisdiction of the person of the accused and of the subject-matter of the prosecution, and power to determine the sufficiency of the indictment. The question of sufficiency was thus addressed to the judicial determination of the trial court, and its action in sustaining and acting upon it is not reviewable by habeas corpus, but only on writ of error or certiorari. Ex parte Yarbrough, supra, 110 U. S. at page 654, 4 Sup. Ct. 152, 28 L. Ed. 274; Ex parte Crouch, 112 U. S. 178, 180, 5 Sup. Ct. 96, 28 L. Ed. 690; Matter of Gregory, 219 U. S. 210, 214, et seq., 31 Sup. Ct. 143, 55 L. Ed. 184; Henry v. Henkel, supra, 235 U. S. at page 229, 35 Sup. Ct. 54, 59 L. Ed. 203.

[5] Equally without help to the petitioner are the allegations in the petition for habeas corpus that it was held by the court upon the trial, on May 23, 1910, that the indictment on its face charged the publication of a privileged communication to the proper recipient; that sinister influences persuaded the court to try the case again on what is alleged to be a second trial on May 24, 1910, when it was held (upon grounds stated in the petition) that under the applicable statute the accused was subject to conviction for innocently publishing a false libel; and that this ruling was made for the purpose of preventing petitioner from showing facts which would have insured his acquittal. It is not alleged in the petition that any judgment or order was made on May 23d, or any other day, dismissing the suit or discharging the jury, or ending the trial. On the contrary, the calendar entries of the proceedings, which are in the record before us, show the following:

"1910—May 23. Jury sworn and respited till tomorrow. May 24. Same jury. Motion to direct verdict of 'not guilty' overruled. Verdict, guilty."

And among what are apparently journal entries are the following:

"Monday, May 23, A. D. 1910. The court resumes its session pursuant to adjournment. Mr. Justice Stafford presiding. * * * United States v. George F. Ormsby, No. 26,501. Indicted for libel."

This was followed by the entry of conviction, which we reproduce in the margin.[2]

Whether or not the judgment entry is misstated in the record as of May 23d instead of May 24th, the calendar and journal entries, taken together, show a conviction under an existing jurisdiction; and such record cannot be overthrown by parol statements such as are contained in the petition. Not only is the allegation that the court's decision of May 23d "ended the trial" not distinctly and unambiguously anything more than petitioner's deduction (Whitten v. Tomlinson, 160 U. S. 242, 243, 16 Sup. Ct. 297, 40 L. Ed. 406), but the facts alleged show, at the most, no more than error or irregularity in the proceedings which might be subject to correction on a review by an appellate court, but which cannot be reviewed on habeas corpus. In our opinion petitioner has not successfully assailed the jurisdiction of the District of Columbia court to receive and act upon the jury's verdict, or the validity and effectiveness of the verdict of conviction as against proceedings in habeas corpus. The question remains whether jurisdiction was lost by what occurred later.

[6] 2. *Jurisdiction to Impose Sentence.*—Assuming that the denial on June 15, 1910, of motion for new trial and in arrest of judgment amounted to a judicial recognition of the validity and finality of the verdict, and conceding that the case was then ripe for sentence, and that an indefinite suspension thereof would have been void (Ex parte United States, 242 U. S. 27, 137 Sup. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), and perhaps would terminate jurisdiction thereafter to impose sentence (United States v. Wilson [C. C.] 46 Fed. 478), the overruling of these motions did not amount to a sentence, and in our opinion jurisdiction to impose sentence was not lost by the adjournment of the term without so imposing it. The record has, in our opinion, no tendency to show that an indefinite postponement was intended. The calendar entries show that on September 28th, when the order of continuance until the October term was made, there was pending a motion, filed by petitioner on August 3d, to vacate the order overruling the motions in arrest of judgment and for new trial. Sentence would not normally be imposed until that motion was disposed of.

[7] It was clearly competent for the trial court to postpone the imposition of sentence to give opportunity for the consideration of this latter motion, or to enable the judge to better satisfy his own mind as to what the punishment ought to be (People v. Brown, 54 Mich. 15, 19 N. W. 571, cited in Ex parte United States, supra), and even though the motion failed to comply with local rules, and so the

[2] "Come again the parties aforesaid in manner as aforesaid and the jury that was respited yesterday; whereupon the conclusion of the evidence the defendant moves the court to direct a verdict of not guilty, which motion is by the court overruled; whereupon, after argument by counsel, and the charge of the court the jury upon their oaths say that the defendant is guilty in manner and form as charged in the indictment; whereupon the defendant, by his counsel, gives notice that he will file a petition for a new trial."

court not bound to entertain it.[3] The continuance of the cause by its own force carried with it petitioner's motion referred to. The fact that the motion had been pending and undecided from August 3d to September 28th tends to indicate that the court was for some reason not then prepared to decide it. In the latter part of December, and before the close of the October term, the petition in lunacy had been filed and granted. It follows from what thus appears that it cannot be said, as matter of law, that the continuance either from the June term until the October term, or from the latter until the January term, was not within the sound discretion of the trial court.

[8] Nor, in our opinion, was jurisdiction to impose sentence lost through the failure of the record to show that petitioner was present when the continuances for the terms were ordered or considered. For the purposes of this hearing we assume that petitioner was absent. It is the general rule that a conviction of felony will be set aside if the defendant is absent at any stage of the actual trial—as when the jury is called and sworn (or on trial of challenges, as in Hopt v. Utah, 110 U. S. 576, 4 Sup. Ct. 202, 28 L. Ed. 262), or when evidence is introduced or the jury charged, or arguments of counsel made, or the verdict rendered or sentence is pronounced, although even this right may under some circumstances and to some extent be waived in noncapital cases.[4] But by what we consider the better authority, the presence of the defendant is not imperatively required on the making or hearing of motions in arrest of judgment or for new trial, or to quash the indictment, or for continuance or change of venue, or when anything else is done which forms no part of the trial proper. Clark's Criminal Procedure (2d Ed.) pp. 495, 496; 1 Bishop's New Criminal Procedure, § 269(1); 2 Wharton's Criminal Procedure, § 1484; State v. Duncan, 7 Wash. 336, 35 Pac. 117, 38 Am. St. Rep. 888 (continuance); State v. Fahey, 35 L. Ann. 9, 12 (continuance). As said in the latter case:

"It can now be considered as elementary that the absence of the accused during the trial of motions not making part of the actual trial of his guilt or innocence, but having reference to the form or conduct of the trial, will not vitiate the proceedings."

This general rule is recognized in a variety of cases—Com. v. Costello, 121 Mass. 371, 23 Am. Rep. 277 (motion for new trial); Alexis v. United States (C. C. A. 5) 129 Fed. 60, 64, 63 C. C. A. 502 (motion for new trial); State v. West, 45 La. Ann. 928, 934, 13 South. 173 (motion for new trial and in arrest of judgment); State v. El-

[3] If the rule affirmatively appearing in Miller v. United States, 41 App. D. C. 52, 59, to have existed a few months later was in force September 28, 1910, the jurisdiction to continue was expressly conferred thereby, although the existence of such rule was not necessary to jurisdiction to continue. The case of Ex parte United States did not, in our opinion, overrule the Miller Case in any respect here involved.

[4] In most of the states other than Georgia the commission of error, even by receiving a verdict of guilty during a wholly involuntary absence of the accused is treated as merely requiring a new trial. Frank v. Mangum, 237 U. S. 309, 339, 35 Sup. Ct. 582, 59 L. Ed. 969; and as to effect of unlawful continuance, see Miller v. United States, supra, 41 App. D. C. at pages 52 and 59.

kins, 63 Mo. 159, 163 (change of venue)—although there are in some cases, including notably Shelton v. Com., 89 Va. 450, 454, 16 S. E. 355, and Coleman v. Com., 90 Va. 635, 637, 19 S. E. 161, holdings to the contrary, and as applied to continuances. The citation in Lewis v. United States, 146 U. S. 370, 372, 13 Sup. Ct. 136, 36 L. Ed. 1011 of the Virginia case of Hooker v. Com., 13 Grat. (Va.) 763, does not, in our opinion, amount to an approval of the doctrine of the Shelton and Coleman Cases, supra. The Lewis Case involved defendant's absence during the examination and challenging of jurors. Weirman v. United States, 36 Ct. of Cl. 236, is not specially in point, as respects continuances of the nature involved here.

[9] 3. *Insanity Proceedings.*—In our opinion the Supreme Court of the District of Columbia is not shown to have lost jurisdiction over either the subject-matter of the criminal prosecution or the person of petitioner, by reason of the proceedings to determine his sanity, or those connected therewith or consequent thereon. It seems clear that, notwithstanding the general provision for lunacy proceedings in equity, contained in section 115a of the Code, section 927 applies to the situation presented here. This later numbered section was not only later in point of enactment than section 115a, but is contained in the chapter devoted to criminal procedure and in terms expressly relates to insane criminals. So far as presently important, it provides that—

"Whenever a person is indicted for an offense, and before trial or after verdict of guilty prima facie evidence is submitted to the court that the accused is then insane, the court may cause a jury to be impaneled .* * * to inquire into the sanity of the accused, and said inquiry shall be conducted in the presence and under the direction of the court. If the jury shall find the accused to be then insane * * * the court may certify the fact to the Secretary of the Interior, who may order such person to be confined in the hospital for the insane. * * *"

The language of the section directly applies to the case before us.

[10] Sec. 927, when considered in connection with the two following sections has been held constitutional and valid, and in a case where the defendant had been convicted, but not sentenced. Wagner v. White, 38 App. D. C. 554. We do not doubt the correctness of this conclusion, or that the statute amply provides for protecting the rights of one whose sanity is in question, through the provision in section 927 that "the person whose sanity is in question shall be entitled to his bill of exceptions and an appeal, as in other cases," in connection with section 929, which provides for notice by the superintendent of the hospital to the justice holding the criminal court when the person so confined is restored to sanity, and for delivering "him to the court according to its proper precept."

[11] While the words of the latter section, "any person confined in a hospital for the insane, charged with crime and subject to be tried therefor or undergoing sentence therefor," do not in terms include one convicted of crime but not yet sentenced, the section was in Wagner v. White, supra, at least impliedly so construed (for that was the situation in Wagner v. White), the provision in question being there spoken or (38 App. D. C. 558) as providing that—

"When one committed under the preceding sections shall be restored to sanity, the superintendent shall give notice thereof to the justice holding the criminal court and deliver him to the court according to its proper precept."

We accept the construction of this statute as adopted by the Court of Appeals of the District.

[12] Nor do we think the section limited to cases where the defendant pleads insanity or himself invokes the provisions of the section. True, in Wagner v. White the application for inquiry was made on defendant's behalf, but the statute does not so limit jurisdiction. By its very terms it is called into operation whenever "prima facie evidence is submitted to the court that the accused is then insane"—language presumably designed to permit application from any legally interested source; and a public officer charged with enforcing the criminal laws is inherently charged with the duty of invoking laws of this character, not only for the protection of society, but of those accused of crime.

[13] We think the proposition that the jury for the term had been discharged, and therefore no valid jury was possible, not sustained. The statute expressly provides that "if the regular jurors have been discharged" the court "may cause a sufficient number of jurors to be drawn to inquire into the sanity of the accused." Code D. C. § 927.

[14] It is also plain that the record precludes an assertion in this habeas corpus proceeding that the action of the district attorney, in instituting inquiry into petitioner's sanity, so amended the criminal charge as to disclaim the existence of criminal intent in the accused, or as to allege his insanity during the trial, or that the trial court judicially adopted either of such propositions. The statutory inquiry was necessarily limited to the sanity of the accused at the time of the trial of the issue under section 927; the specific allegations of mental unsoundness relate to the period since conviction. For example: The petition says "from the first the conduct of the defendant respecting the matters aforesaid impressed your petitioner as peculiar, and since the said trial and conviction your petitioner has formed the opinion that said defendant is of unsound mind," and the pertinent portion of the prayer is that the court "may cause a jury to be impaneled, to inquire into the sanity of the defendant, as by law provided, to the end that, should he be thereby found insane, appropriate proceedings may be taken herein to stay the imprisonment and sentence and effect his commitment to the government hospital for the insane for cure and treatment." The court's preliminary order is not in the record. The applicable calendar entry reads:

"Dec. 21. Petition for lunacy hearing granted, but prayers thereof for commitment of defendant and appointment of alienists denied."

The record of the verdict and judgment recites that the jury found "the defendant to be of unsound mind." The judgment is that petitioner "is an insane person," followed by an order for the certification to the Secretary of the Interior of a copy of the verdict, order referred to, etc. It is true that the affidavits supporting the district attorney's petition are consistent with and have a tendency to prove

petitioner insane for a period long enough to include the trial under the criminal indictment and the publication of the alleged libel; but there has been no adjudication that petitioner was insane previous to his conviction under the criminal charge, and without such adjudication the jurisdiction of the trial court must be regarded, at least for the purposes of our inquiry, as still existing. It is clear that petitioner's commitment to and confinement in the hospital for the insane was not in any sense an imprisonment under and in satisfaction of the criminal charge.

[15] Under the construction put upon the statute in Wagner v. White, supra, we see no escape from the conclusion that the trial court did not, as matter of law, lose jurisdiction over either the subject-matter of the criminal charge or petitioner's person by his commitment to and confinement in the hospital, or by his release therefrom by the superintendent in violation of the statutory requirement of notice to the committing court of a restoration to sanity and the delivery of petitioner to the actual custody of that court, but that such release impaired the court's jurisdiction no more than would an escape. Petitioner's contentions respecting the effect of the insanity proceedings are addressable only to the trial court.

[16] 4. There remains the question whether the jurisdiction of the trial court has been lost by what has occurred since petitioner's discharge from the hospital, during which time he has remained in Ohio. Petitioner alleges that he was all that time engaged in prosecuting certain litigation in equity in the United States District Court for the Southern District of Ohio; that after he had been in Ohio a year the superintendent of the hospital wrote petitioner's attorney that he had no objection to the making of an order by the Ohio federal court that petitioner was under no disability in that (Ohio) district; that the superintendent later entered an appearance in that equity suit in connection with a plea of disability filed by certain defendants therein; that it was adjudged in that equity suit that petitioner was "free from any disability"; that petitioner accordingly wrote the superintendent that he regarded his connection with the hospital ended; that the hospital, having no power to detain any one not under disability, had no jurisdiction over petitioner; that the Ohio federal court had later recognized petitioner's "status" (presumably meaning by permitting him to sue without guardian ad litem); and that "all this was done by consent of the authorities at Washington, D. C. They had a United States attorney here to object if the government desired."

[17] Presumably the statements contained in the last quotation are petitioner's conclusions from the facts stated in the habeas corpus petition;[5] but conceding, for the purposes of this opinion, that the allegations as a whole unexplained, and if petitioner's conclusions are accepted, lend a degree of color to his claim that the issuing of the warrant of August 30, 1920, was instigated by personal and private

---

[5] It is only distinct and unambiguous allegations of fact that are admitted by lack of denial in the return. Whitten v. Tomlinson, supra, 160 U. S. at page 242, 16 Sup. Ct. 297, 40 L. Ed. 406.

interests concerned in the Ohio litigation, we think it enough to say that we find no assertion that the Supreme Court of the District of Columbia has taken any action or assumed any attitude which, in our opinion, amounts to a surrender of its jurisdiction over petitioner. It does not appear, from the record before us, that that court was ever advised, until about the time its bench warrant was issued (which was in August, 1920), that petitioner had been allowed to leave the hospital. Manifestly, neither the hospital superintendent's knowledge of and attitude toward petitioner's stay in Ohio and his conduct of his litigation therein, nor petitioner's notice to the superintendent that he regarded his connection with the hospital ended, could work a surrender by the trial court of its jurisdiction. It is equally manifest that neither the action which was had by the District Court for the Southern District of Ohio, nor even knowledge and acquiescence on the part of the district attorney either of that district or of the District of Columbia with respect to petitioner's absence from the hospital and his conduct of his litigation in Ohio, could as matter of law, accomplish that result. Even an express consent to that effect by the United States Attorney for either district would be futile until judicially approved by the Supreme Court of the District of Columbia.

The conclusion, therefore, seems inevitable that, notwithstanding the unusual situation which has grown up during this long period of years, the trial court must be deemed, for the purposes at least of this habeas corpus hearing, still to have jurisdiction over the subject-matter of the criminal suit and the person of petitioner.

5. We have considered all of petitioner's contentions and have discussed all which seem to justify discussion. The petition contains more or less allegations addressed to the merits of the criminal prosecution, which manifestly call for no mention. Our conclusion is that the court below properly discharged the writ of habeas corpus.

We think, however, that the bench warrant should be interpreted not (as it seems to have been by the court below) as necessarily ordering the presentation of petitioner for sentence, but rather—in the language of the warrant—"to answer the United States touching the offense charged against him." The trial court may or may not find that petitioner has been restored to sanity. Moreover, so far as appears from the record here, petitioner's motion of August 3, 1910, to vacate the previous order overruling motions in arrest of judgment and for new trial, has never been passed upon.[6] The disposition of the case, whatever it may be, is in the hands of the Supreme Court of the District of Columbia. We of course intimate no opinion as to what that disposition should be.

Subject to the modification we have stated above, the order of the District Court for the Southern District of Ohio discharging the writ of habeas corpus is affirmed.

[6] We interpret the entry of June 26, 1911, as applying to the motion for new trial of the insanity issue.