PEOPLE, PLAINTIFF AND APPELLEE, *v.* VÉLEZ ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in a Prosecution
for Murder in the Second Degree.

No. 2065.—Decided July 28, 1923.

PLEADING—INFORMATION—EVIDENCE—VARIANCE—PRINCIPALS.—When an informa-
tion against several persons implicated in the commission of a felony charges
them with the main physical act and thereafter the evidence shows that the
act was committed by another person, but that the accused persons took part
in the commission of the crime, there is no variance between the information
and the evidence, inasmuch as the said persons are considered as principals.

INSTRUCTIONS TO JURY—EXCEPTIONS.—When an exception is taken to the instruc-
tions given by the judge to the jury it is necessary to specify the part of
the instructions to which the exception refers and to state the grounds
thereof, for a general exception to all of the instructions, without giving
the grounds therefor, is not a compliance with the law.

The facts are stated in the opinion.

*Mr. A. A. Vázquez* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The ultimate facts which surround this crime have been
placed before this court neither by the appellant nor yet by
the prosecuting attorney. The latter did sum up the evi-
dence of each witness, but did not furnish us with a state-
ment of what the testimony tended to prove. For example,
from the reading of the record we have no clear idea of the
cause or motive of this crime, although, from the evidence,
the murder probably took place by reason of the desire of
the defendant to share in the treasure for which the slain
man and others were apparently digging. This appellant
has filed no real statement of the case and presented no as-
signment of errors, and therefore we shall consider only
fundamental matters.

Angel Rodríguez was called as a witness. He had previ-
ously been convicted of murder in the second degree for the
killing of the deceased. He gave testimony tending to show
that Francisco Vélez fired the fatal shot, Vélez being neces-

sarily present at the time, if the witness was to be believed
in any respect. The evidence of all the other witnesses,
however, tends to show that Rodríguez himself fired the fatal
shot, and so his testimony was entitled to very little weight.

The deceased and others were digging for the supposed
treasure when various persons came up. One of the new-
comers asked what the men in the pit were doing and when
a defiant answer or the like was given, somebody said,
"Shoot him, so that he should not be so bumptious" (*no
sea tan guapo*), or words to this effect. One witness de-
clared positively that the defendant said, "Shoot him." In
any event, from the evidence the jury had a right to believe
that Francisco Vélez was either present aiding or abetting
in the shooting of the deceased, or at least that he aided
and abetted in such shooting even though he was not actually
present. The proof rather tends to show that Francisco Vé-
lez was actually present at the time, aiding and abetting.

The appellant complains that he was not apprised by the
information that he was accused of having aided or abetted
in the shooting, but that the information solely and exclu-
sively charged him with the shooting. The question is then
whether when a man has a separate trial and the infor-
mation, presented against several, charges the shooting alone,
the defendant may complain of a lack of notice that he was
charged with the homicide.

Independently of all statutes which make an accessory
before the fact a principal, the law was that anybody present
aiding and abetting was a principal. In *Mackalley's Case,*
9th Coke, 67 B, 77 Reprint, 832, the following words were
used:

"So if A. B. & C. are indicted for killing J. S. and that A. struck
him, and that the others were present, procuring, abetting, &c. and
upon the evidence it appears that B. struck, and that A. and C.
were present, &c. in this case the indictment is not pursued in the
circumstance; and yet it is sufficient to maintain the indictment,

for the evidence agrees with the effect of the indictment, and so the variance from the circumstance of the indictment is not material; for it shall be adjudged in law the wound (stroke) of every one of them, and is as strongly the act of the others, as if they all three had held the weapon, &c. and had all together struck the deceased. . . . ."

In *Sir John Heydon's Case,* 11 Coke, 5 B, 77 Reprint, 1151, it was said that the act of one is the act of all of the same party being present, and in *Commonwealth* v. *Chapman,* 11 Pick. 428, it was said: "Evidence that a person was present aiding and abetting would support an indictment charging him, a sole principal, with having struck the blow with his own hands." Other reasoning to the same effect is to be found in some of the cases that we shall cite hereafter for another purpose.

Even if defendant had merely aided and abetted in the killing without actually being present, an information which charges the killing is sufficient to convict anyone who formerly would, as a general matter, have been known as an accessory before the fact. The matter alleged as error is covered by section 36 of the Penal Code as follows:

"Sec. 36.—All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, are principals in any crime so committed."

And more particularly by section 93 of the Code of Criminal Procedure, as follows:

"Sec. 93.—All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid in abetting its commission, though not present, shall be prosecuted, tried and punished as principal, and no other fact need be

alleged in the information against them other than is required in the information against the principal."

The appellant himself concedes, as was the fact, that another was tried and convicted for the shooting. The case of *People* v. *Paz*, 12 P. R. R. 98, instead of aiding appellant is against him. We held there that section 36 was applicable as to accessories before the fact, but that as to accessories after the fact the information must contain distinct averments.

Probably the leading case on the subject is *People* v. *Bliven*, reported in 112 New York, 79; 8 A. S. R. 701. The court, through Mr. Justice Peckham, shows that in statutes like our own the case of an accessory before the fact had been made the case of a principal and that he occupies therefore the same position in the case of felony as such an individual heretofore occupied in cases of treason and misdemeanor; that in treason it had always been the law that there were no accessories, either before or, with one or two exceptions, after the fact; that in regard to misdemeanors the same rule obtained, and that when one sustained a misdemeanor with relation to an act which in felony would make him an accessory before the fact, he was treated as a principal and the indictment charged him as such, and unless the pleader chose it did not mention that the act was committed by another. The court pointed out that the reason for the distinction between felony and misdemeanor cases had not been clear; that the smallness of the misdemeanor case could not be the true reason, because there were grave misdemeanors and some cases which were misdemeanors at common law had been made felonies in this country. The court cited an English case. There a defendant was charged with the uttering of counterfeit shillings and held guilty although he was absent when the coin was actually uttered. The case cited was carefully examined by the English judges who intervened.

Mr. Justice Peckham cited other cases. Then he reviewed the decisions in this country to show that under statutes like our own no greater specification is necessary, and among other cases he cited the case of *People* v. *Outeveras*, 48, Cal. 19.

Mr. Justice Hunt, afterwards Governor of Porto Rico, reviewed the authorities in *States* v. *Geddes*, 55 Pac. 919. He said:

"Geddes is charged as a principal. The information contains no allegation that he advised and encouraged, or aided and abetted, Dixon in committing the crime. The admitted fact is that Brown was murdered by Dixon, and that Geddes, if connected with the homicide at all, was what the law once regarded as an accessory. Appellant raises the question whether an information charging one simply as a principal is sustained by evidence showing that defendant, if guilty of anything, advised and encouraged the commission of the crime. We hold such an information to be sufficient. The common law was otherwise, so far as it pertained to felonies, except high treason, though in misdemeanors all the guilty persons were principals, and could be charged and proceeded against as such. 1 Bish. New. Cr. Law, Sec. 685 et seq. Bishop also writes (section 674) that this distinguishing of the accessory before the fact from the principal is a pure technicality. 'For in natural reason,' he writes, 'the procurer of a crime is not chargeable differently from the doer, and a familiar rule of the common law is that what one does through another's agency is regarded as done by himself. Even the common law of crimes makes no distinction in the punishment between a principal and an accessory; the offense of each being felony, of which the penalty was originally death. Likewise, in morals, there are circumstances wherein we attach more blame to the accessory before the fact than to his principal; as where a husband commands his wife, or a master his servant, to do for his benefit a criminal thing, which, in his absence, is done reluctantly, through fear or affection overpowering a subject mind. We can only conjecture how this distinction came into the law; probably from the same confused apprehensions whence sprang the now exploded distinction between principals and accessories at the fact. Having, however, become established as a technical rule, it cannot be removed by the courts.' Pen. Code, Sec. 1852, expressly abrogates the common-law distinctions referred to, and provides that all

persons concerned in the commission of a felony whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory, than are required in an indictment or information against his principal.' Clearly, this explicit language is determinative of this feature of the case, and shows that the object of the Code was to put the principal and the agent upon the same legal ground, and to authorize the principal to be charged as if he himself had committed the felony in fact perpetrated by his agent by his advice and encouragement. People v. Bliven, 112 N. Y. 79, 19 N. E. 638; State v. Kent (N. D.) 62 N. W. 631. Constitutional rights guarantied by section 16, art. 3, of the Constitution to the accused, to demand the nature and cause of the accusation, are not violated by the statute permitting an accusation against one as principal who is in fact an agent, for the reason that the old distinction between principal and accessory before the fact was merely arbitrary, and 'without existence in natural reason or the ordinary doctrines of the law.' Bish. New. Cr. Law, Sec. 673. '*Qui facit per alium, facit per se*' is the principle pervading the criminal as well as the civil law, and underlies the statute abolishing distinctions 'more fanciful than real.' People v. Bliven, supra. So by abrogating these distinctions the statute has but done away with 'pure technicality' in order to simplify the practice to harmonize with the advanced thought of the Codes, and we believe a charge against one formerly known as an 'accessory before the fact' is good against him as principal. State v. Kent, supra. The late decision of the supreme court of Washington in State v. Gifford, 53 Pac. 709, overruling an earlier decision of that court (State v. Duncan, 7 Wash. 336, 35 Pac. 117) is against the current of recent authorities; and the reasoning thereof seems to us to involve a non sequitur in this: It being true that he who perpetrates a crime through another's agency thus does it himself, proof that he advised and procured another to do it is proof that he has done it himself. Therefore the charge against him as principal does not exclude an inference that he has done it through a third person, even though on the face of the pleading, by regarding the accused as a principal actor, an impossible state of affairs may appear,—as for instance the charge of rape by a woman. The contrary argument leads to this: If one could not be a principal in the crime of rape, she could

not be a principal if she advised and encouraged rape. But the law declares she shall be a principal, and why may not the law make a woman who aids and abets rape guilty of rape, as well as the principal actor? The legislature had power to abrogate certain criminal distinction, and establish others; and, though from certain aspects an absurdity may appear, from others a perfectly plain and specific charge is made, to which defendant must plead. State v. Rowe, 104 Iowa, 324, 73 N. W. 833; State v. Comstock, 46 Iowa, 265; U. S. v. Snyder, 14 Fed. 554; People v. Chapman, 62 Mich. 280, 28 N. W. 896; Boggus v. State, 34 Ga. 275; State v. Jones, 83 N. C. 605.''

Again, Mr. Justice Hunt, in *Rosencranz* v. *United States,* 155 Fed. 38, 41, said: ''The next contention of plaintiff in error is that the court should have directed a verdict of guilty because of the fatal variance between the indictment and the proof in that the charge is that the plaintiff in error did unlawfully keep and set up a house of ill fame for purposes of prostitution, whereas the evidence merely tended to establish that the plaintiff in error owned the premises and received rental therefor from a woman who used the place for purposes of prostitution.'' The court, after citing some cases that apparently supported the contention of the appellant, showed how these cases had been overruled by *People* v. *Outeveras, supra,* and by *People* v. *Rozelle,* 78 Cal. 84, cited by the *fiscal* of this court. To paraphrase Mr. Justice Hunt: In *State* v. *Steeves,* 43 Pac. 947, the Supreme Court of Oregon passed upon the question now under consideration. A defendant was there jointly indicted with one Kelley for the crime of murder in the first degree. Defendants had separate trials. The defendant Steeves was not present at the killing, but the evidence showed that he counseled and procured his co-defendant to kill the deceased. It was insisted by defendant that inasmuch as he was charged with the overt act and not as an accessory, his constitutional right to be informed of the nature and cause

of the accusation against him was invaded and that he could not tell by an inspection of the charge that an attempt would be made to prove that he was an accessory before the fact, but the court held the contention to be unsound for reasons similar to those we have quoted. Mr. Justice Hunt cites other cases.

In *People* v. *Katz*, 209 N. Y. 311, Ann. Cases, 1915 A, 501, 505, we find the following: "The learned counsel for the defendant argues that the indictment which charges the defendant as principal is not sustained by proof that he aided and abetted others who were jointly indicted with him. The indictment contained three counts, but the only one we need consider is the first, which charges larceny in the simple common-law form. This count charges the defendant with feloniously stealing, taking and carrying away the property described, and the argument is that such a charge is not sufficient to permit proof that the defendant aided and abetted others in the consummation of a conspiracy to commit larceny. Over against this argument we quote the plain language of the statute 'that a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets ·in its commission and whether present or absent, and a person who directly or indirectly counsels, commands or induces another to commit a crime, is a principal,' " citing *People* v. *Bliven, supra,* and other cases. *People* v. *Nolan,* 144 Cal. 76; 77 Pac. 774; *State* v. *Duncan* (Wash.), 35 Pac. 117; *Territory* v. *Guthrie,* 17 Pac. 39, are also applicable.

Other alleged errors were set up in regard to the instructions and the weighing of the proof, but they turn mainly· on the same alleged variance, namely, that the information charged a shooting and the proof showed rather the inciting, aiding or abetting of the crime.

In its instructions the court said, somewhat mistakenly,

that premeditation might be "express" or "tacit", showing later that the court was thinking about "malice." The mistake was harmless and no specific exception was taken. While we review the instructions to see fundamental errors, yet specific exceptions should be taken. Act of May 30, 1904, Laws of 1905, p. 10; *People* v. *Ramírez*, 25 P. R. R. 258 *et seq.* Merely saying "I except to the instructions" is no compliance with the law.

Also we agree with the *fiscal* of this court that the instructions should be regarded as a whole, and we find no prejudicial error therein.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.